**HELDENFELS BROTHERS,
INC., Petitioners,**

v.

**CITY OF CORPUS CHRISTI,
Respondent.**

No. D–0816.

Supreme Court of Texas.

June 3, 1992.

Rehearing Overruled June 24, 1992.

**40**

Andrew J. Lehrman, Corpus Christi, for Heldenfels Bros., Inc.

Carol Estes Bray, Corpus Christi, for City of Corpus Christi.

## OPINION

GONZALEZ, Justice.

This case involves the issue of whether a municipality owed a duty to a subcontractor of requiring the general contractor to provide a "proper" bond on work performed for the municipality. The trial court rendered judgment for the subcontractor, but the court of appeals reversed and rendered. 802 S.W.2d 35. We affirm. The City of Corpus Christi employed La–Man Constructors, Inc., to build a recreation center on the City's park land. The general contract provided for payment to La–Man of $267,748. La–Man agreed to provide the standard performance and payment bonds as required by former TEX.REV. CIV.STAT. art. 5160.[1] La–Man prepared documents which facially appeared to meet the statutory requirements and the City accepted these bonds.

La–Man hired Heldenfels Brothers, Inc., as a subcontractor, to furnish concrete T-beams to support the roof covering the recreation center. Heldenfels constructed the T-beams and delivered them to the project site.

During the course of construction, the City made monthly payments to La–Man for the work completed, less a 10% retainage which would be paid upon completion. The City authorized a payment of $29,250 (less $3,250 retainage) to La–Man for the T-beams supplied by Heldenfels. La–Man contracted to pay Heldenfels $26,000 for its work.

A city inspector noticed cracks in the T-beams provided by Heldenfels. The City subsequently retained $20,000 from La–Man's periodic payment to protect itself against the possibility of defective T-beams. Several reports were prepared by experts regarding the alleged defects in the T-beams. These reports exonerated Heldenfels. Thereafter, La–Man abandoned the project and subsequently filed for bankruptcy, leaving the subcontractors unpaid. Following La–Man's abandonment of the project, the City discovered that the bonds were fraudulent. A new general contractor was hired to complete the project.

Heldenfels filed suit against the City for payment. Following a bench trial, the trial court found for Heldenfels under several theories of recovery including unjust enrichment, quantum meruit, and negligence. The negligence recovery was based upon the acts committed by the City in fulfilling its duty to obtain valid bonds as required by former article 5160.[2] The trial court rendered a $23,250 judgment for Heldenfels plus attorney fees and interest. The court of appeals reversed the trial court's judgment and held that Heldenfels should take nothing. The court of appeals concluded that there was no evidence to support recovery under unjust enrichment or quantum meruit. It also held that former article 5160 did not impose liability on a

---

1. Act of April 13, 1959, 56th Leg., R.S., ch. 93, § 1, 1958 Tex.Gen.Laws 155; *as amended by* Act of May 22, 1969, 61st Leg., R.S., ch. 422, § 1, 1969 Tex.Gen.Laws 1390; *as amended by* Act of May 23, 1975, 64th Leg., R.S., ch. 713, § 1; *amended by* Act of May 26, 1989, 71st Leg., ch. 1138, § 38, 1989 Tex.Gen.Laws 4704, 4704–07; *amended by* Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 11.29, 1991 Tex.Gen.Laws 1067.

2. This is not the first time the City was sued by subcontractors over this project. *See City of Corpus Christi v. Acme Mechanical Contractors, Inc.,* 736 S.W.2d 894 (Tex.App.—Corpus Christi 1987, writ denied); *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.,* 736 S.W.2d 247 (Tex.App.—Corpus Christi 1987, writ denied). Since the City had no direct contractual obligation to the subcontractors, the subcontractors tried various theories of liability against the City. None of them have been successful.

city in the event that accepted bonds were invalid. 802 S.W.2d at 41.[3]

■ The trial court held that Heldenfels was entitled to recover under the quantum meruit doctrine. Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex.1990). To recover under the doctrine of quantum meruit, a plaintiff must establish that: 1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient. *Id.*

The court of appeals denied recovery under this doctrine because it held that there was no evidence which established that Heldenfels, in rendering services to the City, reasonably notified the City that it expected to be paid by the City. 802 S.W.2d at 39.

■ The correct standard for review of a no evidence point is that the reviewing court must consider only the evidence and inferences from evidence which supports the trial court's findings, and disregard all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.,* 774 S.W.2d 666, 668 (Tex. 1989).

■ Heldenfels never actually informed the City that it expected to be paid by it prior to La–Man's abandonment of the project. Heldenfels relied, however, upon the testimony of two witnesses to show that the City knew, before Heldenfels provided the T-beams, that Heldenfels would look to the City for payment.

Kurt Schriefer, an employee of Heldenfels, testified that the City accepted, used, and enjoyed the T-beams "under such circumstances as Heldenfels ... reasonably notified the City that they expected the City to pay for the work." However, Schriefer never revealed those circumstances. In addition, H.C. Heldenfels testified that it is normal to approach the owner for payment when neither the contractor nor the bonding company make payment, and that he would be "greatly surprised" if the City was not aware of Heldenfels' expectations before it began work on the project. "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). We agree with the court of appeals that this testimony provides no evidence that the City had notice that Heldenfels anticipated payment from the City before Heldenfels delivered the T-beams.[4]

■ The trial court also held that Heldenfels was entitled to recovery under the theory of unjust enrichment. A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *See Pope v. Garrett,* 147 Tex. 18, 211 S.W.2d 559, 560, 562 (1948); *Austin v. Duval,* 735 S.W.2d 647, 649 (Tex.App.—Austin 1987, writ denied). We agree with the court of appeals that Heldenfels is not entitled to recovery under the theory of unjust enrichment.

3. The dissent states that the court has reached beyond the narrow issue on which application for writ of error was granted. At 42. "However, the purpose of our notations in granting applications for writs of error is to direct the attention of counsel to points that we particularly desire to have argued, and the granting of the writ brings before us all points which have been properly raised in conformity with the rules." *East Texas Motor Freight Lines v. Loftis,* 148 Tex. 242, 223 S.W.2d 613, 616 (1949).

4. The dissent states that "[t]he record reveals some evidence that Heldenfels relied on the City for payment...." At 43. This is not the issue. The issue is whether Heldenfels notified the City prior to the delivery of the T-beams that it anticipated payment from the City. There is no evidence that it did.

**42**

■ The trial court awarded recovery to Heldenfels based upon the City's retention of funds under the general contract. Because the retention was due to the alleged defects in the T-beams, Heldenfels claimed a right to trace the retained funds to its own entitlement to payment from La-Man for the T-beams. Unjust enrichment is not a proper remedy merely because it "might appear expedient or generally fair that some recompense be afforded for an unfortunate loss" to the claimant, or because the benefits to the person sought to be charged amount to a windfall.[5] *Id.*

Finally, the trial court held that the City was liable to Heldenfels because it negligently performed its duty pursuant to former article 5160. Former article 5160 A provided:

> Any ... corporation ... entering into a formal contract in excess of $25,000 with any ... municipality of this State ... shall be required before commencing such work to execute to the [municipality] the statutory bonds.... Each such bond shall be executed by a corporate surety ... duly authorized to do business in this State.... [T]he bonds shall be payable to the [municipality] and shall be *approved by it as to form.*

(emphasis added).

■ The purpose of acquiring the bond is to protect subcontractors. *See City of Ingleside v. Stewart*, 554 S.W.2d 939, 945 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). However, this purpose does not support the imposition of liability in the absence of an explicit statutory provision. Former article 5160 imposed a statutory duty upon a municipality to ensure that the general contractor posted a sufficient bond; it did not impose any liability for a breach of that duty. There-

fore, we agree with the court of appeals' holding that no tort action arises from a city's failure to secure a valid payment bond from the general contractor under former article 5160.

Because we hold that Heldenfels is not entitled to recovery from the City, we need not address the attorney's fee issue or Heldenfels' request for additional damages. The judgment of the court of appeals is affirmed.

Dissenting opinion by GAMMAGE, J., joined by MAUZY and DOGGETT, JJ.

GAMMAGE, Justice, dissenting.

The court has reached beyond the narrow issue on which application for writ of error was granted—whether the court of appeals erred in reversing the trial court's judgment in favor of Heldenfels on its *negligence* claim.[1] Today's opinion extinguishes other equitable doctrines an unsuspecting[2] subcontractor might reasonably rely on when attempting to recover payment for materials and services rendered. At 40 n. 2. Because I cannot accept the inequity the court imposes today, I respectfully dissent.

### QUANTUM MERUIT

The court's first blow to Heldenfels' equitable right of recovery is delivered against the doctrine of quantum meruit. Although I do not quarrel with its general statement of the law under this theory, the court fails to properly conduct a no evidence review.

The majority opinion reviews the testimony of two of Heldenfels' witnesses, Kurt Schriefer and H.C. Heldenfels, and concludes their testimony provides no evidence to support the trial court's finding that Heldenfels anticipated payment from the

---

5. The dissent states that Heldenfels should recover from the City because otherwise, the City would retain the T-beams free of charge. At 43. However, the record indicates that the City was left with only $2,184 following payment of the additional costs incurred to complete the abandoned project.

1. *See* 34 Tex.Sup.Ct.J. 513, 515–16 (April 13, 1991).

2. Other subcontractors who have dealt with the City on this project may not, however, be so "unsuspecting." They too, know the cost of doing business with the City. *See City of Corpus Christi v. Acme Mechanical Contractors, Inc.*, 736 S.W.2d 894 (Tex.App.—Corpus Christi 1987, writ denied); *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247 (Tex.App.—Corpus Christi 1987, writ denied).

City before delivering the T-beams. At 41. I disagree. The record reveals some evidence that Heldenfels relied on the City for payment. Consistent with this expectation there is evidence the City, when it temporarily assumed the duties of the general contractor, would have relied on Heldenfels for any needed repair or modification to the T-beams. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965) (regarding no evidence review); *see also City of Ingleside v. Stewart*, 554 S.W.2d 939, 945 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.) (payment agreement may be implied and recovery under quantum meruit available where subcontractor deals with municipality in reliance on city's apparent control of project).

## UNJUST ENRICHMENT

The second blow the court inflicts is the rejection of Heldenfels' right of recovery under the doctrine of unjust enrichment. The court concludes that restitution based on the theory of "[u]njust enrichment is not a proper remedy merely because it 'might appear expedient or generally fair that some recompense be afforded for an unfortunate loss' ... or because the benefits to the person [party] sought to be charged amount to a windfall." At 42. Here, the majority's analysis reveals a less than candid approach.

In this case, being "expedient or *generally* fair" has *nothing* to do with Heldenfels' right to recover lest the City be unjustly enriched. It has, however, *everything* to do with "afford[ing] recompense" to Heldenfels to avoid an *inequitable* "windfall" in favor of the City. Unjust enrichment demands restitution when a party receiving property or benefits would be unjustly enriched if it were permitted to retain the property or benefits at the expense of another. *See Fun Times Ctrs., Inc. v. Continental Nat'l Bank of Fort Worth*, 517 S.W.2d 877, 884 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.). Allowing the City to retain the T-beams free of charge, when funds specifically provided for their cost are available, offends all traditional notions of equity that restitution based on the theory of unjust enrichment seeks to prevent.

*See Oxford Fin. Cos. v. Velez*, 807 S.W.2d 460, 465 (Tex.App.—Austin 1991, writ denied).

## NEGLIGENCE

Finally, Heldenfels is defeated under the very statutory provision the court concedes was designed to protect subcontractors. At 42. To give meaning to the protective purpose of former Article 5160 requires the imposition of a duty and liability for damages resulting from the breach of that duty. Otherwise, the statute's protective devices are illusory. *See Jessen Assocs., Inc. v. Bullock*, 531 S.W.2d 593, 599 (Tex. 1975) (purpose of statute should be given full effect); *Greenville Ind. Sch. Dist. v. B & J Excavating, Inc.*, 694 S.W.2d 410, 415 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (Stephens, J., dissenting). I find it "entirely reasonable for a subcontractor to assume that the governmental agency [the City], executing a construction contract covered by Article 5160 will follow the law...." *City of Ingleside*, 554 S.W.2d at 945. If a governmental agency fails to properly secure a payment and performance bond, "then it should also *not* be heard to claim that a subcontractor's only remedy for nonpayment is against the general contractor...." *Id.* (emphasis added).

Beyond rendering the former statute a nullity, the court once more evades conventional notions of equity and just accountability by failing to recognize the legislature's message embodied *in the new statute.* There can be no doubt that under the current statutory scheme, liability *can* arise, and a municipality *can* be held accountable, if it "fails to obtain from the prime contractor a payment bond in compliance with th[e] Act." *See* Tex.Rev.Civ. Stat.Ann. art. 5160 (Vernon Supp.1992). The court should recognize this unequivocal expression of legislative intent.

MAUZY and DOGGETT, JJ., concur.