Reversed and Rendered and Opinion filed November 18, 2003














Reversed and
Rendered and Opinion filed November 18, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01129-CV

____________

 

MYREX INDUSTRIES, INC., Appellant

 

V.

 

DAVID ORTOLON, Appellee

 

_________________________________________________

 

On Appeal from
the 133rd District Court

Harris County, Texas

Trial Court
Cause No. 01-35690

 

_________________________________________________

 

O P I N I O
N

            Appellant, Myrex
Industries, Inc., appeals a judgment in favor of appellee,
David Ortolon, on his quantum meruit
claim to recover commissions allegedly earned while employed by Myrex.  Myrex contends that Ortolon (1)
is precluded from presenting a quantum meruit claim;
(2) failed to prove all elements of his claim; (3) used an incorrect measure of
damages; and (4) the damages awarded are excessive.  We reverse and render.




 








                                                             I.  Background

            Myrex is a
steel fabricator for various industries. 
Myrex hired Ortolon
as an estimator in November 1998.  Ortolon’s duties included selling projects by estimating
the costs involved and preparing bid proposals for customers.  He also had duties after he sold a project
including managing the project, interacting with the customer, writing purchase
orders, and addressing change orders.  Ortolon was paid a salary, plus commissions under Myrex’s “incentive bonus plan.”  Under this plan, an estimator is paid a
commission of five percent of the net profit on the projects he sells.  However, an estimator is not paid the
commission until a project closes.  A project
closes when Myrex collects final payment from the
customer and makes adjustments for job costs. 
Further, if an estimator’s projects that close within a quarter maintain
a certain profit margin, he is paid an additional five percent.  

            Ortolon
resigned from Myrex in March 2001.  At that time, he had been paid commissions
for his projects that had closed. 
However, there were certain projects he had sold that had not yet
closed.  Despite his demand, Myrex refused to pay him commissions on these
projects.  Myrex
asserted it does not pay commissions on projects that close after an estimator
leaves the company.

            Ortolon
sued Myrex for breach of contract and, alternatively,
quantum meruit. 
The jury found in Myrex’s favor on the breach
of contract claim because it found no agreement that Myrex
would pay Ortolon commissions for projects that
closed after his resignation.[1]  However, the jury returned a verdict for Ortolon on his quantum meruit
claim and awarded him $64,631.93.  The
trial court entered judgment for Ortolon in the
amount of $64,631.93 plus prejudgment interest, court costs, and postjudgment interest. 
This appeal followed.

 

 

 class=Section3>

II.  Analysis

            Myrex
presents three issues for review.  In
subpart (c) of its first issue, Myrex contends Ortolon is not entitled to recover in quantum meruit because he failed to prove all elements of a quantum
meruit claim. 
We will address this contention first because it is dispositive
of this appeal.[2]

            Quantum meruit
is an equitable remedy based upon an implied promise to pay for benefits
received.  Heldenfels Bros., Inc. v. City of Corpus Christi, 832
S.W.2d 39, 41 (Tex.
1992).  To recover in quantum meruit, a claimant must prove (1) valuable services were
rendered or materials furnished; (2) for the person sought to be charged; (3)
which services and materials were accepted by the person sought to be charged;
(4) under such circumstances as reasonably notified the person sought to be
charged that the plaintiff in performing such services was expecting to be paid
by the person sought to be charged.  Id.

            Myrex
contends Ortolon’s work on the disputed projects was not accepted by Myrex
under such circumstances that reasonably notified Myrex
that Ortolon was expecting to be paid
commissions.  Specifically, Myrex attacks the legal and factual sufficiency of the
evidence supporting the jury’s “yes” answer to the following question: 




Question 11

Did Ortolon
perform compensable work for Myrex for which Ortolon was not paid? 
            

You are instructed when answering this question that—

One party performs compensable work if valuable services are rendered
or materials furnished for another party who knowingly accepts and uses them
and if the party accepting them should know that the performing party expects
to be paid for the work.[3]

 

            When a party challenges the legal
sufficiency of the evidence supporting an adverse finding on an issue on which
it does not have the burden of proof, that party must demonstrate on appeal
that there is no evidence to support the adverse finding.  Price Pfister, Inc. v. Moore & Kimmey,
Inc., 48 S.W.3d 341, 347 (Tex. App.—Houston [14th Dist.]
2001, pet. denied) (citing Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.
1983)).  We consider all the evidence in
the light most favorable to the jury’s verdict, indulging every reasonable
inference in favor of the prevailing party. 
Id. (citing Associated Indem.
Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex.
1998)).  We will sustain a legal
insufficiency point when (a) there is a complete absence of evidence of a vital
fact; (b) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact; (c) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (d) the evidence
conclusively establishes the opposite of a vital fact.  Id. (citing Merrell Dow Pharms.,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)). 

            When Ortolon
tendered his resignation, he told his supervisor, Kelli
Boze, he expected to be paid commissions for his
projects that had not yet closed.  Ortolon later sent a letter to Jim Moffa,
Myrex’s president, demanding payment for these
projects.  Ortolon
concedes these demands are the only evidence that Myrex
knew Ortolon expected to be paid commissions for the
disputed projects.  However, demands at
the time of, and after, his resignation do not satisfy the “notice” element of
quantum meruit.

            The “notice” element focuses on what
the recipient of the services knew or should have known at the time the
services were accepted.  The claimant
must prove the services “were accepted by
the person sought to be charged. . .
under such circumstances as reasonably notified the person . . . that the
plaintiff in performing such services was expecting to be paid.”  Heldenfels, 832 S.W.2d at 41 (emphasis added).[4]  Our review of the record reveals a complete
absence of evidence that Myrex knew or should have
known at the time Ortolon sold the disputed projects
that he expected to be paid commissions even if the projects closed after his
employment ended.

            In fact, the evidence conclusively
establishes the opposite—Myrex did not know at the time Ortolon
sold the disputed projects that he expected to be paid commissions even if
these projects closed after his employment ended.  Moffa and Boze both testified that under the incentive bonus plan, Myrex does not pay commissions on projects that close after
an estimator leaves the company.  This
policy was in place when Ortolon was hired.  Boze also testified
Myrex’s policy is standard for the steel fabrication
industry.  Moffa
further testified the incentive bonus plan was enacted to motivate estimators
to see their projects through until “the bitter end.”  He explained the difficulties that result
when an estimator leaves the company before a project closes, and another
estimator must close out the project.  Boze confirmed that the commissions are not incentive only
to estimate and sell projects.  Rather,
the commissions are incentive to share in the profits of a project upon
completion through selling and
managing the project.

            Ortolon
disputed that Myrex’s policy was ever conveyed to him
or that he agreed to it.[5]  He also claimed that commissions are paid for
selling projects—not closing out projects. 
Nevertheless, again the “notice” element of quantum meruit
focuses on what Myrex,
not Ortolon, knew or should have known at the time
the projects were sold.  See Heldenfels,
832 S.W.2d at 41.[6]  Regardless of Ortolon’s
interpretation of the incentive bonus plan or its purpose, the evidence
establishes that Myrex does not expect to pay
commissions for projects that close after an employee resigns.  Ortolon does not
point to any evidence of Myrex’s willingness to pay
commissions for his projects that closed after he resigned.[7]  See
Gen. Homes, Inc. v. Denison, 625 S.W.2d 794, 797 (Tex. App.—Houston [14th
Dist.] 1981, no writ).

            Finally, Ortolon
notes that Myrex paid another employee, Dean
Thompson, a commission for a project that closed after he resigned.  However, Moffa
explained that Thompson returned to the company eight days after
resigning.  In negotiating his return, Myrex agreed to pay him a commission for one project that
was still open when he resigned.  This
was a separate agreement from the incentive bonus plan.  Contrary to Ortolon’s
suggestion, this agreement bolsters Myrex’s assertion
that it does not pay commissions for projects that close after an employee
resigns.  Myrex
would not have needed to negotiate a special arrangement with Thompson if it
already felt obligated to pay him for his projects that were still open when he
resigned a few days earlier.  Further, Moffa testified that Thompson did not demand, and was not
paid, commissions for his other projects that were still open when he resigned.

            In sum, there is no evidence Ortolon’s work on the disputed projects was accepted by Myrex under such circumstances giving reasonable notification
to Myrex that Ortolon was
expecting to be paid commissions. 
Therefore, the evidence is legally insufficient to support the jury’s
finding to question eleven,[8] and Ortolon did not prove all elements of his quantum meruit claim.  We
sustain subpart (c) of Myrex’s first issue.[9]

            Because
quantum meruit was the only basis for the trial
court’s judgment, we reverse and render judgment that appellee,
David Ortolon, take nothing.

 

 

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment
rendered and Opinion filed November
 18, 2003.

Panel
consists of Chief Justice Brister and Justices
Anderson and Seymore.

 

 











            [1]  However, the jury also found no agreement
that Ortolon would not be paid for these projects.





            [2]  In subparts (a) and (b) of its first issue,
as well as its second issue, Myrex contends Ortolon is not entitled to recover in quantum meruit because his employment contract covered the disputed
work, and the parties agreed his commissions would terminate when he left the
company.  See Black Lake Pipe Line Co.
v. Union Const. Co., Inc., 538 S.W.2d 80, 86 (Tex. 1976)  (precluding quantum meruit
recovery when express contract covers the services furnished).  Ortolon responds
that Myrex waived its “express contract” defense by
failing to request a jury question.  He
further disputes his employment arrangement was even a contract, much less an
express contract covering payment of commissions for the disputed
projects.  See Fortune Prod. Co. v. Conoco, Inc., 52
S.W.3d 671, 684 (Tex. 2000) (holding party
disputing quantum meruit claim must secure finding
that express contract covers subject matter of the dispute when existence of or
terms of a contract are in doubt). 
However, we need not address these issues because Ortolon
failed to prove all elements of a quantum meruit
claim.





            [3]  Ortolon asserts Myrex waived this issue because in its argument, it failed
to specifically state it is attacking the legal and factual sufficiency of the
evidence.  However, earlier in its brief,
Myrex cited the applicable standards for legal and
factual sufficiency attacks and made clear it is attacking the sufficiency of
the evidence on this jury finding. 
Therefore, we will consider its issue.





            [4]  In Heldenfels, the court held that a subcontractor seeking
payment from the city for beams the subcontractor delivered to the city’s
construction site at a contractor’s request did not prove this quantum meruit element.  832
S.W.2d at 41.  There was no evidence the
city had notice before the subcontractor delivered the beams that the
subcontractor anticipated payment from the city.  Id.





            [5]  Moffa testified he
told Ortolon about this policy at least two times,
and Ortolon agreed it was a smart policy because it
encouraged stability in the employment of estimators.  Boze testified that
he told Ortolon during both of his pre-employment
interviews that he had to be employed at the time a project closed to receive a
bonus.  Ortolon
denied that any of these conversations occurred.





            [6]  In Heldenfels, the majority rejected the dissent’s assertion
that quantum meruit recovery was appropriate based on
evidence that the subcontractor relied on the city for payment because that was
not the issue.  832 S.W.2d at 41, n.4. 





            [7]  Ortolon argues Myrex knew Ortolon expected to be
paid commissions for the disputed projects because he was always paid
commissions when his projects closed. 
However, the testimony of the Myrex officers
proved Myrex viewed commissions for projects that
closed after an estimator resigned differently than commissions for projects
that closed while the estimator was still employed.





            [8]  Having sustained Myrex’s
legal sufficiency challenge, we need not consider its factual sufficiency
challenge.





            [9]  Because Ortolon did
not prove all elements of his quantum meruit claim,
we need not consider subpart (d) of Myrex’s first
issue challenging the measure of damages or its third issue challenging the
amount of damages.