Opinion filed October 25, 2007











 
 
  
 
 







 
 
  
 
 




Opinion filed October 25,
2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00355-CV 

                                                     __________

 

                              QUANTUM
ELECTRIC, INC., Appellant

 

                                                             V.

 

                        SCOTT
& WHITE PROPERTIES, INC., Appellee

 



 

                                         On
Appeal from the 146th District Court

 

                                                            Bell
County, Texas

 

                                                 Trial
Court Cause No. 210,150B

 



 

                                              M E M O R A
N D U M  O P I N I O N

 

This
lawsuit by Quantum Electric, Inc., a subcontractor, against Scott & White
Properties, Inc. (S & W), the owner, arose out of the construction of a
Hilton Garden Inn near Scott & White Hospital in Temple.  S & W
contracted with Lyda Builders, Inc. as the general contractor for Lyda Builders
to build the Hilton Garden Inn for the fixed price of $8,545,000.  In turn,
Lyda Builders signed its standard subcontract agreement with Quantum for
$838,000 for the electrical work.  Both contracts contemplated that changes
would be made during actual construction.








The
project had numerous problems.  There was a meeting in Arlington where
representatives of S & W, Lyda Builders, and Quantum agreed to changes that
were needed.  After the meeting, Quantum=s
president wrote to Don Simpson of Lyda Builders on August 12, 2003, to confirm
the changes.  Rick Martin of S & W noted his agreement or disagreement with
the listed changes, and the August 12 letter was faxed back by Tim DeBord, the
project superintendent, to Shane Goodrum, the president of Quantum, from Lyda
Builders=s office in
Bell County.  S & W agrees that, after the initial change order meeting in
Arlington, A[m]ultiple
change orders were authorized and delivered to Quantum Electric by Rick Martin
in Temple, Texas.  Rick Martin also penciled in change orders on drawings in
Temple, Texas.@

S
& W wanted the hotel to open in December 2003.  To speed up the changes,
Don Simpson of Lyda Builders wrote a letter to Rob Hardy of S & W on
November 20, 2003, proposing that S & W agree to guarantee to pay
for the cost of the materials needed for the changes with Aa 15% markup for the
subcontractor (Quantum Electric).  Actual cost will be based on invoices paid
by Quantum.@  After
Hardy signed the letter indicating S & W=s
agreement, Simpson sent a copy of the letter to Quantum with a postscript
stating:  AThis is
Quantum Electric=s
authorization to purchase the material included in the change orders you have
submitted to date.@

Quantum
sued S & W, the owner, rather than Lyda Builders, for changes that Quantum
allegedly made and for retainage.  The suit was filed in Williamson County,
although the Hilton Garden Inn was constructed in Bell County. Quantum contends
that (1) venue should have remained in Williamson County; (2) S & W
breached its contracts (the change orders) with Quantum; (3) alternatively,
Quantum was a third-party beneficiary of the letter agreement between Lyda
Builders and S & W approving the order of material for the change orders;
and (4) alternatively, Quantum was entitled to sue S & W for recovery under
quantum meruit.

We
hold that the transfer of venue to Bell County was proper, that the change
orders were in accord with the Construction Contract and the Electrical
Subcontract and that S & W did not breach a contract with Quantum, that S
& W did agree in the November 20 letter that Quantum would be a third-party
beneficiary of S & W=s
guarantee to pay for the cost of materials needed for the changes referred to
in the letter, and that Quantum is not entitled to recover under a theory of
quantum meruit.  We affirm in part.








Because
there are fact questions on Quantum=s
alternative claim that it was a third-party beneficiary of the November 20
letter agreement between Lyda Builders and S & W concerning material
Quantum was to order for changes to the original contracts, we reverse in part
and remand for a trial on the third-party beneficiary claim.

The
Standard of Review

The standards of review for traditional summary
judgment proceedings are well established and well defined.   Am. Tobacco
Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Lear Siegler, Inc. v.
Perez, 819 S.W.2d 470, 471 (Tex. 1991); Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548-49 (Tex. 1985); City of Houston v. Clear Creek
Basin Authority, 589 S.W.2d 671 (Tex. 1979). 

In
reviewing a venue decision, we conduct an independent review of the entire
record, including the trial on the merits, to determine whether any probative
evidence supports the trial court=s
venue decision.  Ruiz v. Conoco, Inc., 868 S.W.2d 752, 758 (Tex. 1993). 
If there is any probative evidence in the entire record, we must uphold the
trial court=s
determination on the matter of venue.  Bonham State Bank v. Beadle, 907
S.W.2d 465, 471 (Tex. 1995).

Quantum=s Venue Arguments and
Breach of Contract Claim

Both
parties agree that venue in this case is governed by  Tex. Civ. Prac.  & Rem. Code Ann. ' 15.002(a)(1) (Vernon 2002):

(a)
Except as otherwise provided by this subchapter . . . , all lawsuits shall be
brought:

 

(1)
in the county in which all or a substantial part of the events or omissions
giving rise to the claim occurred.

 








Quantum
makes two arguments to support venue in Williamson County: (1) the change
orders after August 2003 were separate agreements between S & W and Quantum
that were negotiated, performed, and breached in Williamson County and (2) S
& W orally agreed in a meeting in Williamson County that S & W would
pay Quantum if Quantum allowed S & W to view all Quantum=s documents supporting the
amounts claimed.  Both arguments rest on false premises.  The change orders
were not separate agreements but were pursuant to and part of the Construction
Contract and the Electrical Subcontract; all or part of the change orders were
not substantially negotiated or performed in Williamson County.  The alleged
oral agreement occurred during settlement negotiations in a meeting after
Quantum filed suit, a fact omitted in Quantum=s
brief. Even if there were an oral settlement agreement, it would not support
venue in Williamson County.

 Venue
is determined when the cause of action accrues.  Tex. Civ. Prac. & Rem. Code Ann. ' 15.006 (Vernon 2002).  A meeting between the
parties after the lawsuit is filed cannot be relied on to establish venue under
Section 15.002(a)(1).  In addition, Quantum=s
alleged Aadditional
agreement@ cannot
establish venue because it did not comply with Tex. R. Civ. P. 11.  The alleged oral agreement was
unenforceable because S & W denied its existence in S & W=s pleadings.  Kennedy v.
Hyde, 682 S.W.2d 525, 530 (Tex. 1984).  We turn to discuss Quantum=s first venue argument and
breach of contract claim.

Construction
contracts are governed by general contract principles.  Raymond v. Rahme,
78 S.W.3d 552, 561 (Tex. App.CAustin
2002, no pet.).  Privity is required for any recovery in an action based on
construction contracts.  Jensen Const. Co. v. Dallas County, 920 S.W.2d
761, 772 (Tex. App.CDallas
1996, writ denied).  In its brief, Quantum acknowledges that ordinarily a
subcontractor is not in privity with the owner and must look to the general
contractor for payment. City of Corpus Christi v. Acme Mech. Contractors,
Inc., 736 S.W.2d 894, 897 (Tex. App.CCorpus
Christi 1987, writ denied).  But Quantum argues that S & W agreed with
Quantum that the 150 change orders would be agreements between Quantum and S
& W that were separate and apart from the Construction Contract and the
Electrical Subcontract.  Quantum bases its breach of contract action and its
venue argument on its characterization of the change orders as separate
contracts.  We disagree.








S
& W and Lyda Builders signed a Standard Form of Agreement Between Owner and
Contractor, AIA Document A101-1997 (the Construction Contract).  Lyda Builders
signed its standard subcontract agreement with Quantum (the Electrical
Subcontract).  Article 1.1.2 of the general conditions of the Construction
Contract provided that the AContract
Documents shall not be construed to create a contractual relationship of any
kind . . . between the Owner and a Subcontractor or Sub-subcontractor.@  Article 1 of the
Electrical Subcontract provided that Athis
Agreement and the General Contract between the Owner and Contractor shall
constitute Contract Documents.@
Under Article 3 of the Electrical Subcontract, Lyda Builders agreed to pay
Quantum $838,000 for the electrical work Asubject
to additions and deductions for changes as may be agreed upon in writing.@  Article 7 of the general
conditions of the Construction Contract and Article 13 of the Electrical
Subcontract provided for change orders.   Article 7 required that all
subcontractors submit any deviations to the general contractor and that the
deviations be approved by the architect, the owner, and/or the general
contractor.  Article 13 of the Electrical Subcontract provided a detailed
agreement between Lyda Builders and Quantum on how changes in the scope of the
work would be handled. 

Quantum=s contention that each of
the 150 change orders was a separate agreement with S & W is
based on the following:  a letter dated August 12, 2003, from Quantum=s president to Don Simpson
of Lyda Builders reflecting changes agreed upon at a meeting earlier that
month; a letter agreement dated November 20, 2003, between Lyda Builders and S
& W; and Quantum=s 
conversations with representatives of S & W about the changes to be made. 
The record does not support Quantum=s
contention.  The change orders were consistent with the Construction Contract
and the Electrical Subcontract.  There is no evidence that S & W entered
into a separate agreement that was to be outside those two contracts; S & W
did, however, modify its Construction Contract with Lyda Builders when it
agreed to the additional guarantee in the November 20 letter.  Even with S &
W=s guarantee of
payment for material in the November 20 letter, the actions of the various
parties were consistent with the Construction Contract and the Electrical
Subcontract.  There is no evidence in the record of a contract between S &
W and Quantum.

The
November 20 letter guaranteed payment for material and indicated that S & W
had agreed to changes that were needed, although we cannot tell from the record
exactly what changes were contemplated by the letter.  The earlier letter dated
August 12, 2003, from Quantum=s
president to Don Simpson listed some changes and contained written comments by
Rick Martin of S & W, agreeing or disagreeing with the listed changes. 
Quantum=s president
testified that he received a faxed copy of that letter with Rick Martin=s notations beside the
listed changes.  Neither the August 12 letter nor the November 20 letter can be
relied on by Quantum to establish privity of contract between S & W and
Quantum.  Moreover, Quantum=s
actions after the letters continued to be consistent with the Construction
Documents.








After
the November 20, 2003 letter from Simpson to Hardy, Quantum followed the
procedures set forth in Article 13 of its Electrical Subcontract to process
change orders that are the subject of this suit.  The change requests,
numbering from 44A through 152DC, plus retainage constitute Quantum=s claim for an additional
$506,377.13.  All of the change requests were on Quantum=s letterhead and were addressed to Lyda
Construction or Lyda Builders.  Until filing this suit against S & W,
Quantum treated this as a normal dispute under its Electrical Subcontract with
Lyda Builders.  The record does not reflect why Quantum did not sue Lyda
Builders (and its bonding company) for payment and S & W only on its
guarantee of payment for the materials.

Lyda
Builders was required by S & W to post a payment bond.  By letter dated
April 15, 2004, addressed to Lyda Builders, S & W, and United States
Fidelity and Guaranty Company, Quantum=s
president stated that Quantum had previously notified Lyda Builders of the
amount owed, that the amount of $506,377.13 remained unpaid, and that Quantum
was making claims Aupon
the bond provided, and if none, claims a lien upon the land.@  Quantum=s claim included retainage
under its Electrical Subcontract.  In its Subcontractor=s Affidavit of Claim for Mechanic=s Lien, Quantum=s president swore under
oath that Quantum was owed the amount pursuant to its Electrical Subcontract
with Lyda Builders.  That statement was not inconsistent with S & W=s
guarantee that Quantum would be reimbursed for the material if Lyda Builders
failed to pay Quantum.  Subsequent to that demand letter, Quantum=s president exchanged
numerous letters with Don Simpson of Lyda Builders in an attempt to get the
change orders and retainage claims paid.

After
submitting the claims to Lyda Builders, Quantum did meet with Lyda Builders and
representatives of S & W.  Those discussions appear to have followed the
agreement of Lyda Builders and Quantum in Article 13(a) of the Electrical
Subcontract:

Any increase or
decrease in the Subcontract price resulting from such changes shall be agreed
upon in writing by the parties hereto.  In case the parties cannot agree
thereon, such increase or decrease shall be determined by the Owner=s Representative.

 








The
pre-1995 venue law allowed venue Ain
the county in which all or part of the cause of action accrued or in the county
of defendant=s
residence.@  Former Tex. Civ. Prac. & Rem. Code ' 15.001 (1986).  The 1995
amendment narrowed the venue requirement to Ain
the county in which all or a substantial part of the events or omissions giving
rise to the claim occurred.@ 
Section 15.002(a)(1).  After 1995, isolated facts connected to the lawsuit are
not sufficient to establish venue, as they were under the old venue scheme.  Chiriboga
v. State Farm Mut. Auto. Ins. Co., 96 S.W.3d 673, 681 (Tex. App.CAustin 2003, no pet.).  The
three cases relied upon by Quantum B
Hendrick v. McMorrow, 852 S.W.2d 22, 25 (Tex. App.CBeaumont 1993, no writ); Humphrey
v. May, 804 S.W.2d 328, 329 (Tex. App.CAustin
1991, writ denied); and Petromark Minerals, Inc. v. Buttes Resources Co.,
633 S.W.2d 657, 660 (Tex. App.CHouston
[14th Dist.] 1982, writ dism=d
w.o.j.) B were decided
prior to the 1995 amendments.  The Construction Contract and the Electrical
Subcontract governed the Hilton Garden Inn construction project.  All or substantially
all of the events surrounding that project occurred in Bell County

In
its motion to transfer venue, S & W also urged that venue should be
transferred to Bell County for the convenience of the parties.  Most of the
events relating to the construction of the Hilton Garden Inn occurred in Bell
County.  In addition, there remains pending under Cause No. 207,331B in Bell
County, Texas, a separate lawsuit concerning some of these same issues and
parties.  The suit was brought by the Reynolds Company in Bell County against
Quantum and Lyda Builders for failure to pay monies owed to the Reynolds
Company.  Quantum cross-claimed against Lyda Builders for the same $506,377.13
it seeks from S & W in this lawsuit.   Quantum also filed a third-party
petition against S & W in the Reynolds Company lawsuit.  Transfer of this
case to Bell County did not work an injustice upon Quantum and was more
convenient for the parties.  In Garza v. Garcia, 137 S.W.3d 36 (Tex.
2004), the supreme court held that an order transferring venue is not
reviewable when one ground for a transfer was convenience.  We overrule Quantum=s issues on venue and
breach of contract.

Third-Party
Beneficiary Claim

Quantum
also relies on the letter dated November 20 from Don Simpson of Lyda Builders 
to Rob Hardy of S & W for its argument that Quantum was a third-party
beneficiary of that letter agreement.  The contents of that letter are as
follows:

Dear Rob:

 

There
have been electrical changes and additions made to the drawings causing an
increase in cost for the electrical work on the project.  The cost of this work
is being reviewed by the architect and the engineer, but the final value of
these change orders may not be agreed upon for a few days.  The material for
these changes must be ordered immediately if the hotel is to open in December.

 








I
propose that Scott and White agree to guarantee to pay the cost of these key
materials on a cost reimbursable basis for actual material cost, plus sales tax,
actual freight cost if any and a 15% markup for the subcontractor (Quantum
Electric).  Actual cost will be based on invoices paid by Quantum.  Upon
approval of these change orders in question everything will [be] converted to a
lump sum.

 

This
will permit the material to be ordered and Quantum will have approval to
purchase with a promise of payment and Scott and White will only be exposed to
actual cost of materials required to complete the project.

 

If
you are in agreement with this please sign below.

 

Don Simpson, P.E.                                           Rob Hardy

Lyda Builders, Inc.                                           Scott and
White Properties, Inc.

 

The
terms of the letter indicate that S & W expected that its guarantee would
be communicated to Quantum.  After both Simpson and Hardy signed the letter,
Simpson then sent a copy of the letter to Quantum with this postscript typed at
the bottom of the copy:

This
is Quantum Electric=s
authorization to purchase the material included in the change orders you have
submitted to date.  Payment will be made as described in agreement between Lyda
Builders, Inc. and Scott and White Properties, Inc.  Upon approval of change
orders everything will be converted to the lump sum contract.

 

Don Simpson,
P.E.

Lyda Builders,
Inc.

 

A
third party is a beneficiary to a contract if (1) the contracting parties
intended to secure a benefit to the third party and (2) the contracting parties
entered into a contract directly for the third party=s benefit.  Stine v. Stewart, 80 S.W.3d
586, 590-91 (Tex. 2002).  The letter agreement satisfies both those conditions. 
The letter benefitted both S & W and Quantum:  S & W wanted the hotel
to open in December and Quantum wanted to be certain it would be paid for
materials.  Lyda Builders=s
contract with S & W was for a fixed price, and Quantum=s Electrical Subcontract
was for a fixed price.  It is not surprising that Quantum would want to know
that S & W had approved the changes required to complete the project and
that S & W would guarantee that Quantum would be paid at least for the
material if Lyda Builders failed to pay Quantum.








To
qualify as an intended third-party beneficiary, a party must show that the
party is either a Adonee@ or a Acreditor@ beneficiary of the
contract.  MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d
647, 651 (Tex. 1999).  An agreement benefits a creditor beneficiary if
performance will come to him or her in satisfaction of a legal duty, such as an
indebtedness, contractual obligation, or other legally enforceable commitment
owed to the third party by the promisee.  Stine, 80 S.W.3d at 590-91; Grinnell
v. Munson, 137 S.W.3d 706 (Tex. App.CSan
Antonio 2004,  no pet.).  Lyda Builders had contractual obligations to
Quantum.  We sustain Quantum=s
contention that it was the third-party beneficiary of S & W=s guarantee of payment
under the November 20 letter agreement.  The record does not reflect whether S
& W paid Lyda Builders for the material referred to in the November 20
letter.  Our holding does not preclude S & W from raising defenses or
predicates to its performance on the guarantee.   

Quantum
Meruit Claim

Quantum
meruit is an equitable theory of recovery based on an implied agreement to pay
for benefits received.  Vortt Exploration Co. v. Chevron U.S.A., Inc.,
787 S.W.2d 942, 944 (Tex. 1990).  To recover under the doctrine of quantum
meruit, a plaintiff must establish (1) that valuable services and/or materials
were furnished (2) to the party sought to be charged (3) and accepted by the
party sought to be charged (4) under such circumstances as reasonably notified
the recipient that the plaintiff, in performing, expected to be paid by the
recipient.  Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d
39, 41 (Tex. 1992).  

If
an express contract exists covering the subject matter, there can be no
recovery under quantum meruit.  Vortt Exploration, 787 S.W.2d at 944.
Quantum is attempting to recover for the material and work contemplated by
changes pursuant to the Construction Contract and the Electrical Subcontract. 
The addition of S & W=s
guarantee of payment in the November 20 letter was a modification to the
Construction Contract, and it expressly covered the subject matter.  Therefore,
Quantum cannot recover under a quantum meruit theory.  Jensen Const.,
920, S.W.2d at 774. Quantum=s
claim in quantum meruit for the extra work required by S & W required it to
prove that the requirements imposed by S & W were not reasonably within the
scope of the Construction Documents.  Black Lake Pipe Line Co. v. Union
Constr. Co., 538 S.W.2d 80, 86 (Tex. 1976), overruled on other grounds
by Sterner v. Marathon Oil Co., 767 S.W.2d 686 (Tex. 1989).  Quantum
has not provided that proof.








Moreover,
Quantum has not established that there were Acircumstances
as reasonably notified [S & W] that [Quantum], in performing, expected to
be paid by [S & W]@
unless required by its guarantee in the November 20 letter.  Simpson=s postscript to the
November 20 letter agreement stated to Quantum that payment would be as
provided in the Construction Contract.  We overrule Quantum=s issue on quantum meruit.

This
Court=s Ruling

We
reverse the summary judgment for S & W in part and remand for a trial on
Quantum=s third-party
beneficiary claim for payment of material under the November 20, 2003 letter. 
Otherwise, the judgment of the trial court is affirmed. 

 

 

TERRY McCALL

JUSTICE

October 25, 2007

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.