**Opinion issued April 19, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00234-CV

————————————

**M & E ENDEAVOURS LLC, Appellant**

**V.**

**CINTEX WIRELESS LLC, Appellee**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-06803**

---

## MEMORANDUM OPINION

This is a dispute between a bulk vendor of cell phones and its customer, a prepaid cellular service provider. The vendor's predecessor company, Haddad Interests, entered into a relationship with Cintex Wireless, in which it supplied Cintex with used cell phones. The plaintiff, M&E Endeavours, took over Haddad's

role as supplier to Cintex. A dispute arose over the quality of the phones sold to Cintex. M&E sued Cintex for payment. Cintex asserted counterclaims under the DTPA and various other causes of action. After the close of evidence in a jury trial, Cintex moved for a directed verdict. In its motion, Cintex argued that it did not receive notice of Haddad's assignment to M&E of any accounts receivable Cintex owed to Haddad. Cintex argued that this failure deprived M&E of standing to sue for nonpayment of the accounts.

The trial court directed a verdict in favor of Cintex. The trial court then granted Cintex's motion to nonsuit its counterclaims without prejudice. On appeal, M&E challenges the trial court's directed verdict and its order granting Cintex's nonsuit. We conclude that M&E adduced evidence that it had the capacity to sue for the unpaid invoices. We therefore reverse and remand for a new trial.

## BACKGROUND

In 2011, Moe Salgaonkar and Elias (Eli) Haddad went into business wholesaling used cell phones. Eli Haddad provided financing and support, and Salgaonkar began operating under the name of Eli Haddad's company, Haddad Interests. The new business purchased used phones from wireless carriers at auction, inspected them, classified them by condition, and resold them. In July of 2011, Salgaonkar and Eli Haddad met with representatives of Cintex at Cintex's offices in Maryland to discuss selling the phones to Cintex. The parties discussed various

2

aspects of the proposed sales, including quality standards, warranty terms, and price. Cintex ordered samples from Haddad, which Cintex found satisfactory. Further orders followed, but Cintex was less satisfied with Haddad's fulfillment of them. Haddad's shipments were often late. According to Cintex, the phones often weren't in the condition requested, and were sometimes missing batteries, chargers, and other accessories. However, because Cintex needed the phones, it continued placing orders throughout the fall, returning the phones that did not meet its standards.

Meanwhile, Moe Salgaonkar and Eli Haddad separated their cell phone venture from Haddad's other businesses and formed M&E. Eli Haddad and Salgaonkar filed a certificate of formation on August 28 to create M&E Endeavours LLC. Haddad and Salgaonkar did not disclose this to Cintex immediately. Through November 7, the invoices that Salgaonkar issued to Cintex read "Haddad Interest LLC" at the top, not M&E. On October 25, Salgaonkar told Cintex by email that "due to recent fraudulent activity in our account," Haddad Interests had to "change [its] banking accounts." The email listed M&E and Haddad's existing address under the heading "new company info." The email did not refer to M&E as a limited liability company. Invoices received by Cintex after November 9 were labeled "M&E Endeavours." Two invoices on November 9 labeled "DBA Cell City" as the seller of the phones. "Cell City" is the name of one of Salgaonkar's other business ventures.

According to Cintex's testimony at trial, Cintex believed that it was doing business with Haddad. Cintex's internal records did not change the name on their accounts to M&E or any of the other names from which it received invoices.

On December 1, Salgaonkar accepted Cintex's first batch of returned phones, crediting Cintex $168,319.50 for the roughly 11,000 phones returned. While Cintex was assembling a second batch of returns, Salgaonkar complained that some of the returned phones were missing accessories or parts. Salgaonkar further complained that in addition to what Cintex owed for the missing parts, it had an unpaid balance of $31,898.50. When Cintex didn't respond satisfactorily, M&E sued Cintex.

Cintex did not file a verified denial or other pleading contesting M&E's capacity to sue.

Salgaonkar and Jennifer Shappell, Cintex's vice president of procurement, were the only witnesses at trial. Shappell admitted that Cintex still owed $31,898.50, but she contended that M&E had not made a formal demand for payment and that Cintex had been waiting to pay until it resolved the controversy over the unreturned accessories. After the close of evidence, Cintex moved for a directed verdict on the ground that M&E lacked standing to prosecute its claims. In its motion, Cintex cited Section 9.406 of the Business and Commerce Code, which requires an account creditor to provide an authenticated notice to the account debtor upon assigning the

account. TEX. BUS. & COM. CODE ANN. § 9.406 (West 2011 & Supp. 2015). The trial court granted Cintex's motion for directed verdict.

## DISCUSSION

### I.      Directed Verdict

M&E contends that the trial court erred in granting Cintex's motion for directed verdict. M&E first argues that Cintex's motion for directed verdict was really a challenge to M&E's capacity, which Cintex waived by not asserting in a verified pleading as required by Rule 93 of the Rules of Civil Procedure. TEX. R. CIV. P. 93. M&E further argues that it had capacity to sue as a contracting party according to the invoices under which it sued. Because (1) M&E introduced some evidence that it was the contracting party for at least some of the invoices, and some evidence that it was successor-in-interest to Haddad for other invoices, rather than an assignee of the accounts; (2) Cintex did not challenge M&E's capacity by filing a verified denial; and (3) Cintex raised no objection to M&E's testimony and documentary evidence that it had capacity to sue Cintex, we hold that the trial court erred in directing a verdict on M&E's breach of contract claim.

### A.      Standard of Review

We review directed verdicts under the same legal-sufficiency standard that applies to no-evidence summary judgments. *City of Keller v. Wilson*, 168 S.W.3d 802, 823–24 (Tex. 2005); *see Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248

(Tex. 2013) (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003)). We sustain a legal-sufficiency point when (1) there is a complete absence of evidence regarding a vital fact, (2) rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Wilson*, 168 S.W.3d at 810. We consider the evidence in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id.* at 826. The nonmovant bears the burden to identify evidence before the trial court that raises a genuine issue of material fact as to each challenged element of its cause of action. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–07 (Tex. 2002). A directed verdict is proper if a party "fails to present evidence raising a fact issue essential to [its] right of recovery," or if the party "admits or the evidence conclusively establishes a defense to [its] cause of action." *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). We may affirm a directed verdict on any ground that supports it. *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 443 (Tex. App.—Dallas 2002, pet. denied). However, if there is evidence that raises a material fact issue on any theory of recovery, a directed verdict is improper and the case must be reversed and remanded. *See Cox v. Southern Garrett, L.L.C.*, 245 S.W.3d 574, 578 (Tex.

App.—Houston [1st Dist.] 2007, no pet.) (citing *Szczepanik v. First S. Tr. Co.*, 883 S.W.2d 648, 649 (Tex. 1994) (per curiam)).

## B. M&E's Evidence

M&E sought recovery either as a successor-in-interest under contracts to which Haddad was a party or in its own capacity under contracts to which M&E was itself a contracting party. The record contains some evidence to support either contention.

In support of a finding that M&E was Haddad's successor-in-interest, the record contains some evidence that M&E replaced Haddad as the entity through which Salgaonkar conducted his cell phone business. A successor-in-interest is an entity that assumes the burdens and becomes invested with the rights of another entity by some form of legal succession. *See CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 896 (Tex. App.—Dallas 2007, pet. denied) (citing *Int'l Ass'n of Machinists v. Falstaff Brewing Corp.*, 328 S.W.2d 778, 781 (Tex. Civ. App.—Houston 1959, no writ)). Moe Salgaonkar and Eli Haddad were M&E's promoters, filing M&E's certificate of formation as a limited liability company. Eli Haddad and Mara Wilson, Salgaonkar's wife, were listed as manager and director of the new LLC. Salgaonkar testified at trial that M&E was operating as a successor to Haddad, observing that "[t]he company might have started as Haddad [but] we took over so [we] are not collecting for somebody else." Salgaonkar's later invoices

7

to M&E are under M&E's name.  The jury could have concluded from this evidence that M&E was Haddad's successor-in-interest.  *See Paladin*, 222 S.W.3d at 896.

Further, considering the evidence in the light most favorable to M&E, the jury could have found that M&E was an original party to some of the invoices that remained unpaid.  *See Keller*, 168 S.W.3d at 827.  In an October 25 email, Salgaonkar provided Cintex its "new company info," identifying itself as M&E for purposes of payment.  While Salgaonkar did not begin invoicing Cintex as M&E until December 1, the jury could have concluded that the October 25 email placed Cintex on notice that it was dealing with a new business entity, M&E.  Whether Cintex owed only $31,898.50 per its own admission or $53,323.50 per M&E's allegations, it incurred this outstanding balance after Salgaonkar's email.  Alternatively, even if the jury did not find that M&E was an original party to the invoices immediately following the email, the last several invoices were sent under M&E's name.  The jury could have found that M&E was a party to these last invoices.

M&E could also have recovered in quantum meruit or for unjust enrichment.  To recover for unjust enrichment, a plaintiff must show that the defendant has obtained a benefit from her by fraud, duress, or the taking of an undue advantage.  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  To recover in quantum meruit, a plaintiff must establish that (1) valuable services or

materials were furnished, (2) to the defendant, (3) which were accepted by the defendant, and (4) under circumstances that reasonably notified the defendant that the plaintiff expected to be paid for the services or materials. *Id.* Cintex claims that the existence of an express contract between Cintex and Haddad precludes recovery based on these quasi-contract theories. Cintex overlooks that the relationship between it and the sellers was not governed by a single overarching contract, but consisted of a series of individual purchases. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) ("If an agreement to make a future agreement is not sufficiently definite as to all of the future agreement's essential and material terms, the agreement to agree 'is nugatory.'"). Cintex challenges the existence of a contract between it and M&E. If the receipt of these goods is not governed by an express contract, a quasi-contract theory is a valid alternative theory. *Cf. Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory . . . ."). We therefore hold that the trial court's directed verdict was improper as to M&E's unjust enrichment and quantum meruit claims; rather, jury questions on these claims should be conditioned on the jury's determination that no agreement existed between Cintex and M&E. *See Fischer*, 479 S.W.3d at 237; *Fortune Prod. Co.*, 52 S.W.3d at 684; *Heldenfels*, 832 S.W.2d at 41.

## C.    Lack of Verified Pleading

M&E contends that Cintex's objection to its standing to sue is actually an objection to M&E's capacity, which Cintex waived by not asserting in a verified plea.  M&E cites Rule 93 of the Rules of Civil Procedure, which provides that certain defenses must be raised by a verified plea.  TEX. R. CIV. P. 93.  These include allegations that the plaintiff lacks legal capacity to sue, is not entitled to recover in the capacity it sues, or that there is a defect of parties.  TEX. R. CIV. P. 93(1), (2), (4). A party who fails to assert an objection to capacity by verified plea waives it.  *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003).

A party must have both standing to sue and capacity to sue.  *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005).  Whether the successor-in-interest of a party to a contract is entitled to sue on the contract is a question of capacity, not standing.  *See John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 651 (Tex. App.—Dallas 2013, pet. denied) (characterizing question whether successor to company named in contract could sue on contract as capacity issue); *Nine Greenway Ltd. v. Heard, Goggan, Blair & Williams*, 875 S.W.2d 784, 787 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (whether landlord was successor-in-interest to original landlord was issue of capacity, not standing).

Cintex's motion for directed verdict was not a challenge to M&E's standing. In *John C. Flood v. Supermedia, L.L.C.*, the Dallas Court of Appeals considered the

defendants' appeal from the trial court's grant of summary judgment against them in a suit for breach of contract. 408 S.W.3d at 648–49. The defendants argued that the plaintiffs lacked standing to sue because the plaintiff's predecessor business entity was a party to the contract. *Id.* at 651. The Court of Appeals disagreed, reasoning that the question of whether the plaintiff could sue on the contract in its present name was an issue of capacity, not standing. *Id.* at 651–52. Because the defendants had not challenged the plaintiff's capacity by a verified pleading as required by rule 93 of the Rules of Civil Procedure, the Court of Appeals held that the defendants failed to raise the issue of whether the plaintiff could sue on the contract. *Id.* at 654–55.

As in *Flood*, the issue in this case is whether a successor entity may sue on contracts between its predecessor entity and a third party. Following *Flood*, we hold that a challenge to the right of a contracting party's successor-in-interest to sue under the contract concerns the successor entity's capacity, and thus must be raised in a verified pleading. TEX. R. CIV. P. 93; *Flood*, 408 S.W.3d at 653–55. Because Cintex did not challenge M&E's capacity by verified pleading, Cintex waived its objection. TEX. R. CIV. P. 93; *Flood*, 408 S.W.3d at 653–55.

### D. Trial by Consent

Cintex counters by arguing that, regardless of any defect in its pleadings, the directed verdict was proper because M&E's lack of capacity was tried by consent in

the trial court. Rule 67 of the Rules of Civil Procedure provides that when issues not raised by the pleadings are tried by the express or implied consent of the parties, they must be treated as if raised by the pleadings. TEX. R. CIV. P. 67; *Teel v. Shifflett*, 309 S.W.3d 597, 602 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). To determine whether the issue was tried by consent, a court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Teel*, 309 S.W.3d at 602; *Greene v. Young*, 174 S.W.3d 291, 301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A court may deem a party's unpleaded issue to have been tried by consent when evidence is developed on the issue under circumstances indicating that both parties understood the issue was in the case, and the other party failed to object. *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 780 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied)).

The parties litigated the question of M&E's entitlement to sue on Haddad's contracts as well as those for which M&E contended that it was the contracting entity. Both parties testified about the relationship between Haddad and M&E. Salgaonkar recounted that Eli Haddad transitioned their cell phone business from Haddad to M&E and that M&E was the entity entitled to sue. Cintex's trial counsel cross-examined Salgaonkar on what he told Cintex about this transition. Cintex's counsel elicited testimony that Salgaonkar invoiced Cintex using the Haddad name

for two months after he incorporated M&E, but other invoices listed M&E by name. Cintex's counsel also elicited testimony from Jennifer Shappell that Cintex believed it was doing business with Haddad, not M&E. Further, Cintex challenged M&E's capacity to sue on Haddad's contracts in its motion for directed verdict, which it styled a challenge to M&E's standing.

The parties thus developed the issue of M&E's capacity to sue by presenting relevant evidence. Because the parties adduced conflicting evidence at trial about whether M&E had the capacity to seek a recovery against Cintex, we hold that the trial court erred in directing a verdict on M&E's lack of capacity. The fact that the issue was tried by consent undermines, rather than supports, the conclusion that a directed verdict on capacity was proper. *See* TEX. R. CIV. P. 67; *Teel v. Shifflett*, 309 S.W.3d at 602; *C. Springs 300*, 287 S.W.3d at 780.

## II.    Cintex's Counterclaims

M&E contends that the trial court erred in granting Cintex's nonsuit of its counterclaims without prejudice. M&E argues first that the trial court should have entered judgment with prejudice against Cintex because the court dismissed Cintex's counterclaims. In the alternative, M&E contends that the Rules of Civil Procedure forbade the trial court from granting Cintex's nonsuit without prejudice after Cintex rested at trial.

The record does not support M&E's contention that the trial court dismissed Cintex's counterclaims before Cintex moved to nonsuit them. M&E cites the following statement by the trial court at the hearing on Cintex's directed verdict motion: "The counterclaim, we dealt with that earlier. It went away. I made a ruling on their counterclaim." M&E does not cite, nor can we locate, any such ruling by the trial court. Without some further basis in the record, we cannot accept that the trial court dismissed Cintex's counterclaim with prejudice.

M&E observes that the trial court did not nonsuit Cintex's counterclaims until two days after Cintex rested on its case, and complains that the Rules of Civil Procedure prohibit a party from nonsuiting its claims after it has finished presenting its evidence at trial. TEX. R. CIV. P. 162; *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011). The trial court may, however, grant a plaintiff's nonsuit after the close of evidence in its sound discretion. *Miller v. Sam Montgomery Oldsmobile Co.*, 656 S.W.2d 917, 918–19 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd); *see also O'Brien v. Stanzel*, 603 S.W.2d 826, 828 (Tex. 1980) ("We do not hold that there are no situations in which a trial court may exercise discretion even though the trial has progressed beyond the rule's point of no return . . . ."). The trial court nonsuited Cintex's counterclaims before reading the charge to the jury. The record suggests that Cintex did not learn until late in the trial that it might have claims against Haddad as well as M&E. In light of these circumstances, the trial court did not abuse

14

its discretion in allowing Cintex to nonsuit its counterclaims without prejudice to reasserting them. *See O'Brien*, 603 S.W.2d at 828; *Miller*, 656 S.W.2d at 919.

## Conclusion

We hold that the trial court erred in granting Cintex's motion for directed verdict. We further hold that the trial court did not abuse its discretion by granting Cintex's motion for nonsuit of its counterclaims without prejudice to refiling them. We therefore reverse the judgment of the trial court and remand for a new trial, at which Cintex may reassert its counterclaims.

Jane Bland
Justice

Panel consists of Justices Bland, Brown, and Lloyd.