**BP AUTOMOTIVE LP d/b/a Bossier Dodge, Appellant**

v.

**RML WAXAHACHIE DODGE, LLC, RLJ–McLarty–Landers Automotive Holdings, LLC, RML Waxahachie Ford, LLC, and RML Waxahachie GMC, LLC, Appellees**

No. 06–16–00021–CV

Court of Appeals of Texas, Texarkana.

Submitted: January 18, 2017

Decided: March 2, 2017

---

Blake L. Beckham, Sarita A. Smithee, The Beckham Group, PC, Dallas, TX, Rodney F. Page, Jennifer M.K. Mammen, Bryan Cave LLP, Washington, DC, for appellee.

Kevin J. Terrazas, Timothy Cleveland, Cleveland/Terrazas PLLC, Austin, TX, for appellant.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Moseley

This is an appeal of a suit brought by BP Automotive LP d/b/a Bossier Dodge (Automotive) against RML Waxahachie Dodge, LLC, RLJ–McLarty–Landers Automotive Holdings, LLC, RML Waxahachie Ford, LLC, and RML Waxahachie GMC, LLC. Because a great deal of the holdings in this opinion depend on the actions of previous courts litigating controversies between these parties (and related entities), it is worthwhile to recite the prior history of the litigation between them. The previous actions of this case involving this

controversy have been partially litigated in several hearings in the United States Bankruptcy Court for the Western District of Texas, multiple appeals of the findings in bankruptcy court to federal district court, additional appeals of the federal district court rulings to the United States Fifth Circuit Court of Appeals, a suit filed in the district court of Freestone County, Texas, which resulted in the entry of summary judgment, an appeal of the district court judgment, which was heard by Texas' First Court of Appeals, the entry of additional motions for summary judgment by the Freestone County district court, and now an appeal to this Court.[1] In this case, Automotive appeals the trial court's partial grant of Appellees'[2] second traditional motion for summary judgment (Second MSJ), and the trial court's grant of Appellees' third and fourth traditional motions for summary judgment (Third MSJ and Fourth MSJ, respectively). That portion of the Second MSJ granted by the trial court asserted Appellees' entitlement to judgment as a matter of law on Automotive's breach of contract, quantum meruit, unjust enrichment, and fraud claims under the theory of collateral estoppel, or issue preclusion, based on the findings and judgments of the federal bankruptcy court in favor of Appellees on similar causes of action asserted by BPRE, L.P. (BPRE), whose ownership is identical to Automotive's.[3] The Third MSJ asserted Appellees' entitlement to summary judgment on Automotive's tortious interference with prospective business relations and unfair competition by misappropriation claims on the same basis. In their Fourth MSJ, Appellees asserted their right to judgment as a matter of law on Automotive's tortious interference with prospective business relations claim based on the alternative theory that there were no genuine issues of material fact that (1) there were no prospective business relations and (2) any damages suffered by Automotive were not caused by Appellees.

In this appeal, Automotive asserts that the trial court erred in granting summary judgment because (1) collateral estoppel does not apply in this case, (2) the First Court of Appeals has previously held that more than a scintilla of evidence supported Automotive's claims for tortious interference with prospective business relations and unfair competition by misappropriation, and (3) Appellees' Fourth MSJ was filed after the trial court's submission deadline and Automotive did not have notice of the hearing, thereby denying it an opportunity to respond.[4] As explained be-

---

1. Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* Tex. Gov't Code Ann. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* Tex. R. App. P. 41.3.

2. Hereinafter, RML Waxahachie Dodge, LLC, individually, will be referred to as "RML Dodge," RLJ–McLarty–Landers Automotive Holdings, LLC, individually, will be referred to as "RLJ Holdings," and the appellees jointly will be referred to as "Appellees." Each of the Appellees are companies that are part of

an Arkansas–based group of companies that own twenty-three automobile dealerships and thirty-six automotive franchises in seven states, including Texas.

3. Automotive is the former operator of the Chrysler and Dodge dealership in Waxahachie. Its limited partners are Randy Pretzer and Scott Bossier. BPRE, L.P., whose limited partners are Pretzer and Bossier, is a real-estate holding company that owned the land on which Automotive operated its dealership.

4. The trial court granted Appellees' Second MSJ relating to Automotive's claims for breach of contract, unjust enrichment, quantum meruit, and fraud on June 29, 2015. It

low, we affirm the trial court's summary judgment on Automotive's breach of contract, unfair competition by misappropriation, and fraud claims, and we reverse the trial court's summary judgment on Automotive's quantum meruit, unjust enrichment, and tortious interference with prospective business relations claims.

## I. Background

### A. Factual Overview [5]

On March 20, 2009, Automotive and RML Dodge entered into an Asset Purchase Agreement (the APA) whereby RML Dodge agreed to purchase the assets of Automotive, including its franchise from Chrysler, for $180,100.00. One condition of closing on the APA was that RML Dodge would enter into a lease with BPRE for the land and improvements on which Automotive operated its dealership. That lease was signed by the parties, but was not to take effect until the closing of the APA. Before RML Dodge could secure the approval of Chrysler Motors, LLC (Old Chrysler), as required by the APA, Old Chrysler filed for bankruptcy protection on April 30, 2009. Under the terms of the APA, Automotive was required to continue to conduct its business in the ordinary course of business until closing. Nevertheless, on May 1, 2009, Automotive closed its dealership, and in mid–May 2009, Old Chrysler rejected its franchise in bankruptcy. Also under its terms, the APA could not close until RML Dodge secured all of the necessary permits and licenses, which included securing a franchise from Old Chrysler and a license from the Texas Motor Vehicle Commission (TMVC). Upon filing for bankruptcy protection, Old Chrysler stopped issuing franchises. Evidence of a franchise was required to make a license application to the TMVC. As a result, the APA never closed, and the associated lease never came into effect.

### B. Procedural Overview

#### 1. Litigation in Federal Court

Without a lessee for its property, BPRE could not pay its mortgage and, consequently, filed for protection in a Chapter 11 bankruptcy proceeding November 2, 2009. Three weeks later, BPRE and Automotive jointly filed an adversary proceeding in the bankruptcy case against Appellees asserting claims for breach of contract, tortious interference with franchise agreement, tortious interference with prospective business relations, civil conspiracy, unfair competition by misappropriation, breach of lease, quantum meruit, trespass to real property, and unjust enrichment (the adversary proceeding). On January 26, 2010, the bankruptcy court dismissed Automotive and all of its claims without prejudice, finding it was not a proper party since there was not "related to" jurisdiction as to its claims. On that same day, Automotive filed this suit in the district court of Freestone County. The adversary proceeding and the state court action apparently proceeded on parallel courses, with the adversary

granted Appellees' Third MSJ and Fourth MSJ relating to tortious interference with business relations and unfair competition by misappropriation on February 16, 2016.

**5.** Details of the background facts have been fully set forth in *BPRE, LP v. RML Waxahachie Dodge, LLC, et al. (In re BPRE, LP)*, Chap. 11 Adv. No. 09-61289, Adv. No. 09-06032, 2010 WL 3270497 (Bankr. W.D. Tex. Aug. 13,

2010) (mem. op.), *aff'd in part, remanded in part by BPRE, LP v. RML Waxahachie Dodge, LLC, et al (In re BPRE, LP)*, No. W-10-CA-267, 2011 WL 13069405 (W.D. Tex. Sept. 28, 2011) (mem. op. and order), and in *BP Automotive, L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562 (Tex. App.–Houston [1st Dist.] 2014, no pet.). We will discuss only those facts necessary to the disposition of this appeal.

proceeding going to trial first. BPRE filed its amended adversary complaint March 22, 2010, wherein it reurged all of the original causes of action (except unfair competition by misappropriation) but added causes of action for fraudulent inducement and fraud by nondisclosure.

On July 15, 2010, Judge Ronald B. King of the bankruptcy court entered twenty-nine findings of fact that had been "fully-adjudicated" by that court and were "binding in the trial of these adversary proceedings" (the King findings). After a trial on the merits, Judge John C. Akard of the bankruptcy court issued his memorandum opinion in which he found against BPRE on all of its causes of action asserted by it in the original adversary complaint. *BPRE, L.P.*, 2010 WL 3270497, at *10–13. After judgment was entered, Akard's decision was appealed to federal district court, where it was affirmed in part and remanded in part for consideration of the fraudulent inducement and fraud by non-disclosure claims asserted in the amended adversary complaint. *In re BPRE, LP*, 2011 WL 13069405. On remand, Akard held another hearing and entered his unreported memorandum opinion on remand on December 2, 2011, finding against BPRE on its fraud-based claims. Both memorandum opinions [6] by Akard contained fact-findings regarding BPRE's claims, as well as the circumstances surrounding the formation and performance of the APA (the Akard findings). After judgment was entered, the opinion on remand was appealed to the federal district court, where it was affirmed on November 28, 2012.

The judgment of the district court was appealed to the Fifth Circuit Court of Appeals, where it was vacated and remanded to the district court for further proceedings. *In re BP RE, L.P.*, 735 F.3d 279, 291 (5th Cir. 2013) (the First Appeal). On remand, the federal district court entered its order construing Akard's memorandum opinions as proposed findings of fact and conclusions of law, adopted them,[7] re-entered its prior memorandum opinion and orders as adopting the bankruptcy court's findings and recommendations, and entered judgment that BPRE take nothing on its claims.. That judgment was appealed to the Fifth Circuit, where it was affirmed. *In re BPRE, L.P.*, 599 Fed.Appx. 182, 183–84 (5th Cir. 2015) (per curiam) (the Second Appeal).

## 2. Litigation in State Court

Meanwhile, in the state district court, Automotive filed its amended petition on August 11, 2011. The amended petition's factual allegations are almost identical to the factual allegations contained in BPRE's amended adversary complaint.[8] On August 15, 2011, the state district court granted Appellees' first amended traditional motion for partial summary judgment and no-evidence motion for partial summary judgment and denied Automotive's traditional motion for summary judgment.

That judgment was appealed and assigned to the Houston First Court of Appeals. The appeal was submitted to the Houston court of appeals after the Fifth Circuit had vacated the bankruptcy judgment in the First Appeal and before the

---

**6.** Akard's first memorandum opinion also adopted the King findings.

**7.** The district court's order also recited that it was construing "the findings of Judge Gargotta regarding Appellant's Motion to Alter or Amend Judgment" as proposed findings and

adopted them. The findings of Judge Gargotta are not included in the appellate record.

**8.** The same attorneys representing BPRE in the adversary proceeding represented Automotive in its state court action.

federal district court adopted the bankruptcy court's findings of fact and conclusions of law. *BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 569 n.3 (Tex. App.–Houston [1st Dist.] 2014, no pet.). The court of appeals reversed Appellees' traditional summary judgment (which was based on the collateral estoppel effect of the judgments of the bankruptcy court) since the Fifth Circuit had vacated those judgments. *Id.* at 569. However, the court of appeals also noted that after submission of the case, the federal district court had adopted the findings of the bankruptcy court and that nothing precluded Appellees from moving for summary judgment based on the subsequent federal court proceedings after it remanded the case. *Id.* at 569 n.3. The Houston court went on to affirm the no-evidence summary judgment in regard to Automotive's tortious interference with franchise agreement and civil conspiracy claims and to reverse the no-evidence summary judgment as to the remaining claims. *Id.* at 570–73.

## A. The State Court and Bankruptcy Court Pleadings

As noted earlier, the amended petition filed in state court by Automotive is almost identical to the amended adversary complaint filed by BPRE in the adversary proceeding. The allegations made in the "Facts Giving Rise to This Action" section of the amended petition are the same allegations, with only slight variations, as those contained in the "Background" section of the amended adversary complaint. Those allegations, in relevant part, may be summarized as alleging:

1. That RML Dodge and Automotive executed the APA for the purchase of Automotive's assets on March 20, 2009, which provided for a closing date of April 14, 2009, or as soon thereafter as practical.

2. That the parties agreed to use their best efforts to satisfy the conditions of the APA in order to close the APA.

3. That RML Dodge agreed to use its best efforts to obtain all licenses, approvals, authorizations, and consents from third parties and governmental authorities required for consummation of the agreements contained in the APA.

4. That on April 17, RML Dodge had reported to Automotive that Old Chrysler had approved the sale, but Chrysler Financial had not.

5. That Appellees had continued to represent to Automotive that they intended to close the APA through April 29, but Old Chrysler filed for bankruptcy on April 30.

6. That Appellees then delayed closing the APA because they knew that Old Chrysler would reject Automotive's franchise and that New Chrysler would award RML Dodge not only the Chrysler and Dodge franchises previously owned by Automotive, but also the Jeep franchise.

Both the amended petition and the amended adversary complaint contain a claim for breach of contract—the APA. The amended petition alleges:

By not using its best efforts to close the Asset Purchase Agreement, despite the explicit language that time was of the essence, Defendant RML [Dodge] has breached the Asset Purchase Agreement by failing to close in a timely manner. Defendant RML [Dodge] failed to obtain the consent, authorization and approval of Chrysler within the ten-day inspection period and failed to use its best efforts to satisfy the conditions set forth in the Asset Purchase Agreement.

The amended adversary complaint breach of contract claim makes an identical allegation, adding that "RML[Dodge] has thus

also breached the lease agreement with BPRE that was incorporated into the Asset Purchase Agreement." The amended petition also alleges that RML Dodge chose not to close the APA "due to its concern over Chrysler's financial position and its inside knowledge that Chrysler would award RML [Dodge] the Chrysler, Dodge, and Jeep franchises through the undisclosed bankruptcy proceeding." The amended adversary complaint also included a claim for breach of the lease in which it alleged that RML Dodge breached the lease by taking possession of its premises and failing to pay rent.

In addition, both the amended petition and amended adversary complaint assert claims for tortious interference with prospective business relations. Both pleadings make general allegations of Appellees' intermeddling with Automotive's and BPRE's relationships with their customers and potential customers and that business relationships were prevented by Appellees' tortious acts.

In the amended petition, Automotive also asserted a claim for unfair competition by misappropriation. Automotive alleges that Appellees misappropriated the franchises and that by misappropriating its franchise, Appellees traded on the goodwill toward the Chrysler brand it had developed through its investment of time, labor, and resources.

Both the amended petition and amended adversary complaint assert a claim for quantum meruit and unjust enrichment.[9] The amended petition alleges that Appellees used Automotive's telephones and service equipment for maintenance of vehicles from their other dealerships, without paying for their use. The amended adversary complaint alleges that Appellees took pos-

session of Automotive's real property and began installing a management system, mowing the grounds, servicing vehicles, and storing items necessary for dealership operations, all without paying rent to BPRE.

Finally, both the amended petition and amended adversary complaint assert claims for fraud, and for fraudulent inducement and fraud by nondisclosure, respectively. The gravamen of each of those claims is the allegation that Appellees represented to Automotive and BPRE that they would operate only a Chrysler and Dodge dealership on the property, knowing that they intended to operate a Chrysler, Dodge, and Jeep dealership. The amended adversary complaint alleges that Appellees knew that the addition of a Jeep dealership would increase the time required to get approvals from Chrysler and the TMVC. Both Automotive and BPRE allege that they relied on this misrepresentation to their detriment by entering the APA and the associated lease, respectively.

### B. The Akard Findings

In his first memorandum opinion, Akard set forth the background facts to the dispute in extensive detail. *BPRE, LP*, 2010 WL 3270497, at *2–9. It is evident from Akard's recitation of the background facts that extensive testimony regarding the negotiations and formation of the APA, as well as of the parties' actions in an effort to close the APA was taken. It is also evident that Bossier and Pretzer, the principals of both Automotive and BPRE, fully participated in the adversary proceeding. Akard also made findings in both his first memorandum opinion and his opinion on remand regarding BPRE's claims. As relevant to this case, these findings included:

9. Although these are designated as separate causes of action, they are based on the same facts and ask for the same damages. There-

fore, we will hereafter refer to both causes of action collectively as "quantum meruit."

1. Regarding BPRE's breach of contract (the APA) and breach of lease claims, the court found that the March lease [10] was an exhibit to the APA and that the two transactions were tied together. The March lease was to become effective (in the terms of the APA "enter into a lease") upon the closing of the APA, which was not to occur until RML Dodge secured the necessary permits, licenses, and a franchise from Chrysler. Although RML Dodge exerted continuous efforts to secure a franchise and a license, it was not able to do so until after March 1, 2010. Since the APA never closed, BPRE had no claim for breach of contract or breach of the March lease. *Id.* at *10, 12.

2. The court found no evidence to support BPRE's tortious interference with prospective business relations claim. *Id.* at *11.

3. Regarding BPRE's quantum meruit and unjust enrichment claims, which were based on the Appellees possession and use of BPRE's real property, the court found that the Appellees' payment of utilities and maintenance of the property defeated those claims. *Id.* at *12–13.

4. Regarding BPRE's fraud in the inducement claim, the court found that the March lease was to become effective upon the closing of the APA, but that the closing of that transaction never occurred because Chrysler filed for bankruptcy, Automotive closed its business on May 1, 2009, and Chrysler cancelled Automotive's franchise. RML Dodge's attempts to close the transaction were prevented by delays in approval by Chrysler and Chrysler Financial. It found no evidence that the approval request to Chrysler included a request for a Jeep dealership, that the approval was delayed because of a request for a Jeep dealership, or that RML Dodge's desire for a Jeep dealership prevented the closing of the APA before Chrysler's bankruptcy.

5. Regarding BPRE's fraud by nondisclosure claim, the court found that RML Dodge did make a representation that it intended only to operate a Chrysler and Dodge dealership and that there was no evidence that RML Dodge delayed the closing of the APA because of efforts to obtain a Jeep franchise.

As to Automotive's breach of contract claim, Akard did not find whether or not the contract was breached. *Id.* at *10. He also did not make any findings on the tortious interference with business relations or unfair competition by misappropriation claims insofar as they related to claims held by Automotive. *Id.* at *11.

## C. The Latest Dispute

After the federal district court adopted the findings and conclusions of the bankruptcy court and entered its take-nothing judgments against BPRE, Appellees filed their Second MSJ. In their Second MSJ, Appellees asserted that Automotive was collaterally estopped from asserting its breach of APA, quantum meruit, and fraud causes of action because of the findings of the bankruptcy court that were adopted by the federal district court. They also assert-

---

**10.** Under the terms of APA, RML Dodge was obligated to enter into a lease with BPRE for the real property its dealership was to occupy. *BPRE, LP,* 2010 WL 3270497, at *3. That lease is referred to by the bankruptcy court as the "March lease." *Id.* at *4. After Old Chrysler filed for bankruptcy protection, the parties negotiated a new lease, referred to as the "July lease." *Id.* at *5–6.

ed that there was no issue of material fact as to one or more of the elements of Automotive's tortious interference with prospective business relations (tortious interference) and unfair competition by misappropriation claims. The trial court granted Appellees' Second MSJ as to Automotive's breach of APA, quantum meruit, and fraud claims on June 29, 2015.

On July 6, 2015, Appellees filed their Third MSJ, arguing that Automotive was collaterally estopped from asserting its tortious interference and unfair competition by misappropriation claims by the federal district court's judgment adopting the findings of the bankruptcy court. On July 21, 2015, Appellees sent Automotive notice that their Third MSJ was set for hearing on September 21, 2015. On August 4, 2015, the trial court sent the parties a notice of case setting as follows:

NOTICE OF CASE SETTING

A SUBMISSION DEADLINE for Motions for Summary Judgment and Responses thereto has been scheduled for **August 21, 2015 at 5:00 p.m.** ....

**NO FORMAL HEARING WILL BE HELD ON THESE MOTIONS. THERE WILL BE NO HEARING ON SEPTEMBER 21, 2015. JUDGE DEBORAH OAKES EVANS WILL RULE ON THESE MATTERS BY SUBMISSION ONLY. PARTIES WILL BE NOTIFIED OF RULING UPON SUCH.**

On August 21, 2015, Automotive filed its response to defendants's Third MSJ.

On August 25, 2015,[11] Appellees filed their Fourth MSJ regarding Automotive's tortious interference claim, asserting (1) that there was no genuine issue of material fact that Automotive had no prospective

business relationship and (2) that there was no issue of material fact that Appellees did not cause any damages to Automotive. On September 14, 2015, Appellees filed their reply to Automotive's response to Third and Fourth[12] MSJs. On September 18, 2015, Automotive filed its objection to and motion to strike Appellees' reply to Third and Fourth MSJs, complaining, *inter alia*, that it had no notice of the date of the hearing on the Fourth MSJ and had been prevented from filing a response. Automotive did not file a response to the Fourth MSJ. On February 16, 2016, the trial court entered its order granting Appellees' Third and Fourth MSJs as to Automotive's tortious interference and unfair competition by misappropriation claims, without stating the basis of its ruling. Automotive did not file a motion for new trial. At oral argument, Automotive acknowledged that it did not attach any evidence in its responses that was not considered by the bankruptcy court in the adversary proceeding.

## II. Standard of Review

 We review the trial court's granting of a summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In our review, all evidence favorable to the nonmovant is taken as true, and we indulge every reasonable inference to be drawn from the evidence and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). If no basis is specified for the trial court's ruling, "we must affirm a summary judgment if any of the grounds on which judgment is sought are meritorious." *Brown v. CitiMortgage, Inc.*, No. 06-

---

11. Although this motion was filed on August 25, 2015, it is undisputed that it was placed in the mail on August 21, 2015.

12. It is undisputed that Automotive did not file a response to the Fourth MSJ.

14-00105-CV, 2015 WL 2437519, at *2 (Tex. App.–Texarkana May 22, 2015, no pet.) (mem. op.) (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

 A party moving for a traditional summary judgment "must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law." *Id.* (citing Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)). "Once the movant produces evidence entitling it to summary judgment, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact." *Id.* (citing *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)). When the defendant conclusively negates at least one essential element of the plaintiff's cause of action, or conclusively establishes each element of an affirmative defense, it is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *Brown*, 2015 WL 2437519, at *2.

## III. Analysis

### A. Collateral Estoppel

In its first point of error, Automotive asserts that the trial court erred in granting summary judgment based on collateral estoppel. It argues that Appellees have failed to show (1) that any findings by the federal courts relevant to this case were ultimate issues and identical to the issues in this case, (2) that the facts sought to be litigated in this case were fully and fairly litigated in the adversary proceeding, (3) that the parties were cast as adversaries in

the adversary proceeding, or (4) that any finding by the federal courts relevant to this case was necessary and essential to their judgments. In addition, Automotive argues that the special circumstances of this case would make it unfair to apply collateral estoppel.

 Collateral estoppel, or issue preclusion, "generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). It "is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

 "[C]ollateral estoppel precludes relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit." *Tarter v. Metro. Sav. & Loan Ass'n*, 744 S.W.2d 926, 927 (Tex. 1988) (citing *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984)).

Under both federal and state law,[13] a claim of collateral estoppel has three elements: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action."

See *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002); *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990).

---

**13.** Whether the preclusive effect of a prior federal case on issues asserted in a Texas state court is governed by state or federal law has not been decided by the Texas Supreme Court since the result is the same under both.

*Nu–Way Energy Corp. v. Delp*, 205 S.W.3d 667, 677 (Tex. App.–Waco 2006, pet. denied) (quoting *Kenedy Mem'l Found.*, 90 S.W.3d at 288 (quoting *Trapnell*, 890 S.W.2d at 801) ); *Jones v. Illinois Emp'rs Ins. Of Wausau*, 136 S.W.3d 728, 737 (Tex. App.–Texarkana 2004, no pet.). Further, an issue decided in the first action must be identical to an issue in the second action. *State & Cty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 697 (Tex. 2001) (per curiam); *Tex. Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001). However, although the issue must be identical, the cause of action may be different in the second action. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 521 (Tex. 1998); *Wilhite v. Adams*, 640 S.W.2d 875, 876 (Tex. 1982) (per curiam). "If a cause of action in the second lawsuit involves an element already decided in the first lawsuit, that cause of action is barred" if the identical issue was actually litigated and essential to the first lawsuit's judgment. *Johnson & Higgins*, 962 S.W.2d at 521. Whether collateral estoppel applies in a particular case is a question of law. *McRae Expl. & Prod., Inc. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 680 (Tex. App.–Waco 1998, no pet.); *Martin v. U.S. Trust Co. of New York*, 690 S.W.2d 300, 307 (Tex. App.–Dallas 1985, writ ref'd n.r.e.)

To determine whether the facts were fully and fairly litigated in the first suit, we consider "(1) whether the parties were fully heard, (2) that the court supported its decision with a reasoned opinion, and (3) that the decision was subject to appeal or was in fact reviewed on appeal." *Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991); *Cole v. G.O. Assocs., Ltd.*, 847 S.W.2d 429, 431 (Tex. App.–Fort Worth 1993, writ denied). To determine whether a fact issue is essential to the judgment, i.e., whether it is an "ultimate issue," we look to the factual determinations made by the trier of fact that are "necessary to form the basis of a judgment." *Tarter*, 744 S.W.2d at 928.

For parties to be cast as adversaries in the first suit, "it is only necessary that the party *against whom* the doctrine is asserted was a party or in privity with a party in the first action." *Trapnell*, 890 S.W.2d at 801–02; *see Eagle Props.*, 807 S.W.2d at 721; *Tex. Capital Secs. Mgmt., Inc. v. Sandefer*, 80 S.W.3d 260, 264 (Tex. App.–Texarkana 2002, pet. struck). Whether collateral estoppel applies depends on the circumstances of the particular case. *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 890 (Tex. 1998); *Sandefer*, 80 S.W.3d at 265. However, parties are generally in privity when "(1) they control an action even if they are not parties to it; (2) their interests are represented by a party to the action; or (3) they are successors in interest, deriving their claims through a party to the prior action." *Neel*, 982 S.W.2d at 890 (citing *Benson v. Wanda Petroleum*, 468 S.W.2d 361, 362 (Tex. 1971)); *Sandefer*, 80 S.W.3d at 265. "Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Sandefer*, 80 S.W.3d at 265 (citing *Benson*, 468 S.W.2d at 363). The determination of whether parties are in privity is the same for both res judicata and collateral estoppel. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996); *Benson*, 468 S.W.2d 361, 363–64 (Tex. 1971).

## 1. Breach of the APA, Fraud, and Unfair Competition by Misappropriation

### a. Is Automotive In Privity with BPRE?

Appellees argue that under the totality of the circumstances, Automotive

and BPRE are in privity, citing *Drago Daic, Trustee v. Nauru Phosphate Royalties (Texas), Inc.*, 27 S.W.3d 695, 699–702 (Tex. App.–Beaumont 2000, pet. denied). They point out that Automotive and BPRE have identical ownership, that the same attorney represented Automotive and BPRE in their respective cases, that the owners of both companies fully participated in the adversary proceeding, that the subject matter of both proceedings involves the same transaction, that both companies claim that the same actions by Appellees breached both the APA and the lease and harmed both companies, and that BPRE adequately represented Automotive's interest in the adversary proceeding.

Automotive argues that the bankruptcy court's comments in its first memorandum opinion that it was not deciding Automotive's breach of APA claim and that it was not making findings regarding Automotive's unfair competition by misappropriation claims and tortious interference with prospective business relationship claims shows that the bankruptcy court separated the claims of Automotive and BPRE. It also argues that it is not in privity with BPRE because (1) it could not sue on behalf of BPRE, (2) its interests were not represented by BPRE since its claims were not adjudicated by the bankruptcy

court, and (3) it is not BPRE's successor in interest.

As Automotive points out, collateral estoppel operates only against a person who has had his day in court, either as a party or as one in privity with a party, so that "the presently asserted interest was actually and adequately represented in the prior trial." *Benson*, 468 S.W.2d at 363. "Privity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation." *Amstadt*, 919 S.W.2d at 653 (citing *Tex. Real Estate Comm'n v. Nagle*, 767 S.W.2d 691, 694 (Tex. 1989)). To make this determination, we begin with the factual basis alleged in the petitions filed in the two lawsuits. *See id.*

The factual basis supporting Automotive's breach of contract, unfair competition by misappropriation,[14] and fraud claims asserted in this lawsuit are all based on the actions of Appellees in delaying the closing of the APA because of their alleged "inside information" regarding the pending Chrysler bankruptcy, their alleged undisclosed desire to obtain a Jeep franchise, and their alleged inside deal to obtain the Chrysler, Dodge, and Jeep franchises from New Chrysler.[15] These same facts are the bases for the breach of lease,

14. In its amended petition, Automotive only asserted that Appellees appropriated the franchises and goodwill of Automotive. In its brief, Automotive argues that summary judgment was erroneous because in his affidavit, Pretzer averred that when Appellees occupied the dealership property, they used Automotive's assets and "had access to [Automotive's] customer lists" and that it did not authorize them "to keep or use [Automotive's] customer lists without payment." However, use of the customer lists were never pled as a basis of this claim. Further, in his affidavit, Pretzer avers that Appellees had access to the customer list, but he does not aver that they used that list in any way. Therefore, Pretzer's affidavit does not support this claim. Further, in

its second point of error, Automotive argues that the First Court of Appeals found more than a scintilla of evidence to support this claim. However, in that record, there was apparently evidence that RML had serviced over 800 customers who appear on the list. *BP Auto., L.P.*, 448 S.W.3d at 572. We have no such summary judgment evidence in our record. In our review, we are limited to the record before us.

15. Automotive's quantum meruit and tortious interference with prospective business relations claims are not based on these factual allegations and will be addressed separately.

fraud in the inducement, and fraud by nondisclosure claims BPRE asserted in its amended adversary complaint. Automotive and BPRE asserting almost identical causes of action based on the same factual allegations is some indication that they share an identity of interest in the basic legal right that is the subject of both lawsuits. *See Amstadt,* 919 S.W.2d at 653.

Further, the memorandum opinions of the bankruptcy court show that BPRE's breach of lease and fraud-based claims were dependent upon proving the same factual basis as Automotive's claims. In its first memorandum opinion, although the bankruptcy court did not find whether Appellees breached the APA, it did find that there was no breach of the March lease because the purchase contemplated by the APA, which was a condition precedent to the lease, never occurred. In addition, its memorandum opinion on remand shows that BPRE's fraud claims were also dependent on showing Appellees' fault in failing to close the APA. In ruling against BPRE on its fraud claims, the bankruptcy court entered specific findings that the closing of the APA never occurred because of the bankruptcy of Old Chrysler, Automotive's closure of its business, and the cancellation of Automotive's franchise by Chrysler. It also found that RML Dodge was using its best efforts to secure Chrysler's approval of the dealership so it could complete the purchase contemplated by the APA, that RML Dodge did not represent that it intended to only operate a Dodge and Chrysler dealership, and that there was no evidence that it was delaying the closing in order to get a Jeep franchise. Thus, Automotive and BPRE "share an identity of interests in the basic legal right that is the subject of litigation." *Id.* In addition, these findings show that the interests asserted by Automotive in this lawsuit were actually and adequately represented in the adversary proceeding by BPRE. *See Benson,* 468 S.W.2d at 363.

In addition, many of the factors considered by the Beaumont court of appeals in *Drago Daic* are present in this case. In *Drago Daic,* Nauru entered into a development agreement with Daic Trustee, M–666, and Drago Daic Interests, Inc. (DDI). Nauru purchased 668 acres of undeveloped land from Daic Trustee and M–666 to develop a private country club and residential subdivision, with DDI as the project developer. It paid $5 million in cash to Daic Trustee and M–666 and executed an $8 million promissory note to them, conditioned on the success of the project and secured by a deed of trust lien. After Nauru terminated DDI as the developer, it filed an arbitration proceeding against DDI. Meanwhile, Daic Trustee and M–666 filed suit in state court. After the arbitration proceeding, the arbitrators found that Nauru properly terminated the development agreement, had no further duties to DDI, and had no liability under the $8 million promissory note to Daic Trustee and M–666. The arbitration award was confirmed by a federal district court. *Drago Daic,* 27 S.W.3d at 697. Based on the federal proceedings, the state court granted summary judgment to Nauru against Daic Trustee and M–666 based on collateral estoppel and res judicata. *Id.* at 698.

In affirming the trial court, the court of appeals found that DDI was in privity with Daic Trustee and M–666. *Id.* at 700. The court emphasized that Drago Daic either owned or controlled all three entities and that he fully participated in the arbitration proceeding. *Id.* 699–700. In addition, it found that Daic Trustee and M–666 had notice that liability on the promissory note would be resolved in the arbitration proceeding since Nauru in its complaint contested its liability under the promissory note. It also noted that the development

agreement referenced the promissory note and the promissory note was conditioned on DDI's performance of the development agreement. Finally, the evidence showed that DDI made several arguments on behalf of Daic Trustee and M–666 in the federal proceedings. *Id.* at 700.

In this case, both BPRE and Automotive are owned and operated jointly by Pretzer and Bossier, both of whom fully participated in the adversary proceeding. Also, the factual allegations made in the amended adversary complaint are based on the alleged actions of, and representations made by, Appellees in conjunction with the APA. In addition, in the joint pretrial order filed in the adversary proceeding, BPRE specifically stated that the breach of the APA and Appellees' fraudulent misrepresentations and nondisclosures were issues in the case. Further, the APA specifically references the March lease, and its effectiveness was dependent on the closing of the APA. Finally, the adversary proceeding transcript shows that BPRE made arguments relating to the actions of, and representations made by, Appellees in conjunction with the APA transaction.

Under these facts, we find that Automotive and BPRE are in privity regarding the breach of contract, unfair competition by misappropriation, and fraud claims since the owners of both companies controlled and fully participated in the prior litigation and because Automotive's interest in establishing Appellees' breach of the APA and their alleged fraudulent actions regarding the franchise was fully represented by BPRE in the adversary proceeding. *See Neel,* 982 S.W.2d at 890.

### b. Are the Issues Identical and the Bankruptcy Court's Findings Essential to its Judgment?

◼ Next, Automotive argues that the Appellees have shown neither that the is-

sues are identical in both cases nor that the issues were ultimate issues in the bankruptcy case. It argues that while the adversary proceeding concerned BPRE's lease, this suit involves the APA. Automotive also argues that Appellees have not shown that any of the facts litigated in the adversary proceeding that are relevant to this case were essential to the bankruptcy court's judgment. Automotive's arguments ignore the fact that the bankruptcy court found that the APA and the March lease were both part of one transaction and that the effectiveness of the March lease was dependent on the closing of the APA. In order to show that Appellees breached the March lease, BPRE had to show that RML Dodge breached its duty to close under the APA. In both cases, it is alleged that RML Dodge failed to use its best efforts to secure the necessary approvals and satisfy the other conditions of the APA in order to close in a timely manner. In addition, in both cases it is alleged that Appellees knowingly misrepresented that they were intending to only operate a Chrysler and Dodge dealership when they knew they also intended to operate a Jeep dealership. Thus, identical issues are involved in each case.

Further, as seen above, the bankruptcy court made specific findings, essential to its judgment regarding BPRE's breach of lease and fraud-based claims, that RML Dodge was using its best efforts to secure Chrysler's approval of the dealership so it could complete the purchase contemplated by the APA, that RML Dodge did not represent that it intended to only operate a Dodge and Chrysler dealership, and that there was no evidence that it was delaying the closing in order to get a Jeep franchise. In addition, it made findings that the APA never closed because of the bankruptcy of Old Chrysler and the rejection or

cancellation of Automotive's franchise by Old Chrysler.[16]

Based on the amended petition, to prevail on its fraud claim in this case, Automotive had to show, *inter alia*, that Appellees made a false representation that they only wanted to operate a Chrysler and Dodge dealership. *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (listing elements of a common law fraud claim). To prevail on its breach of contract claim, Automotive had to show, *inter alia*, that Appellees wrongfully breached their duty to close the APA. *See Runge v. Raytheon E–Sys., Inc.*, 57 S.W.3d 562, 565 (Tex. App.–Waco 2001, no pet.) (listing elements of breach of contract). And to show unfair competition by misappropriation under its pleading, Automotive had to prove, *inter alia*, that Appellees used Automotive's franchise in competition with it. *See BP Auto., L.P.*, 448 S.W.3d at 571–72 (listing elements of unfair competition and misappropriation). The bankruptcy court's findings defeat each of these elements of Automotive's claims. Thus, the bankruptcy court made findings essential to its judgment that defeat essential elements of Automotive's breach of contract, unfair competition by misappropriation, and fraud claims.

### c. Were the issues fully and fairly litigated?

■ Automotive relies on the bankruptcy court's "carve out" of its claims, and that it was not a party, to argue that the facts it seeks to litigate in this case were not fully and fairly litigated in the adversary proceeding. However, as discussed above, although the bankruptcy court did not decide Automotives' claims, the fact issues upon which those claims are based,

and which Automotive seeks to litigate in this case, were fully heard in the bankruptcy court. In addition, that court supported its decisions with reasoned opinions. The findings and conclusions of the bankruptcy court were adopted by the federal district court in a reasoned opinion that was affirmed on appeal. Under these circumstances, we find the facts were fully and fairly litigated. *See Mower*, 811 S.W.2d at 562.

### d. Do Special Circumstances Preclude the Application of Collateral Estoppel?

■ Finally, Automotive argues that the special circumstances of this case would make it unfair to apply collateral estoppel. *See Trapnell*, 890 S.W.2d at 803–05. It argues that since Appellees' motion to dismiss Automotive's claims in the adversary proceeding was granted, it would be unfair to now preclude it from prosecuting its claims in state court. In the alternative, it argues that Appellees should be judicially estopped from asserting collateral estoppel since (1) they took an inconsistent position in the adversary proceeding (i.e., argued that Automotive's claims were unrelated to BPRE's claims), (2) they persuaded the bankruptcy court to accept their position, and (3) they would derive an unfair advantage in the present suit.

The only evidence concerning the dismissal of Automotive from the adversary proceeding is the motion to drop misjoined party filed by Appellees and the order of dismissal. Appellees' motion to drop misjoined party alleged that Automotive was not the debtor in BPRE's bankruptcy and was not entitled to invoke the jurisdiction of the bankruptcy court. It went on to argue that Automotive had no legal

---

**16.** This finding directly refutes Automotive's claim that Appellees misappropriated its franchise.

grounds to invoke the subject-matter jurisdiction of the bankruptcy court or to force Appellees to defend "unrelated State Court matters" in that forum. The order dismissing Automotive from the adversary proceeding stated that Automotive was not a proper party since there was not "related to" jurisdiction as to its claims.

### i. Special Circumstances

■ The Texas Supreme Court has previously held that in certain limited circumstances, it would be inappropriate to enforce collateral estoppel even if it would apply under the facts of the case. *Id.* In *Trapnell*, Trapnell's wife, who was allergic to sulfites, died after eating fruit salad, hash browns, and apple pie at the Corpus Christi Naval Air Station Officer's Club. *Id.* at 797–98. Trapnell sued the Navy in federal court alleging negligence in using sulfites in the preparation of its food. He also sued the various manufacturers of sulfites, the manufacturer and distributor of potato whitener, the distributor of the hash browns, the apple processor, and the manufacturer and distributor of the apple pie filling in state court. *Id.* at 798. After the federal court refused to join the other defendants in the federal suit, it proceeded to trial and held the Navy was not liable based on its finding that potato whitener was not added to the fruit salad. *Id.* at 799. Based on the federal court finding that potato whitener was not added to the fruit salad, the state trial court granted summary judgment to the potato whitener defendants based on collateral estoppel and granted summary judgment as to the other defendants based on lack of causation. *Id.* at 800. On appeal, the Texas Supreme Court initially held that fact issues remained as to causation which precluded summary judgment for the hash brown and apple pie defendants. *Id.* at 800–01. It then held that although the potato whitener defendants had established all of the

elements of collateral estoppel, it should not apply under the facts of that case. *Id.* at 801–03. The court pointed out that collateral estoppel "is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues." *Id.* at 801. The court reasoned that since the hash brown and apple pie filling defendants, to whom collateral estoppel would not apply, could relitigate the potato whitener issue, applying collateral estoppel on behalf of the potato whitener defendants would not prevent multiple lawsuits, conserve judicial resources, or prevent inconsistent judgments. *Id.* at 803–04. In addition, the court held that the "[a]pplication of collateral estoppel also involves considerations of fairness." *Id.* at 804. The court noted that "[g]iven the procedural uniqueness of [that] case," the Trapnells would be placed in a "situation in which they would be foreclosed from litigating the potato whitener issue as to one set of defendants, yet the issue would remain in the case as a defense to the Trapnells' claims against the remaining defendants," which would be unfair since the procedural predicament was "not of their own making." *Id.* at 804–05.

Although the Supreme Court recognized that considerations of fairness are involved in the application of collateral estoppel, its holding in *Trapnell* was based on the additional consideration that none of the purposes of collateral estoppel would have been achieved in its application. Automotive has not cited any case in which collateral estoppel was not applied solely on the basis of "unfairness." Further, in this case, although Automotive's claims were dismissed from the adversary proceeding, BPRE, whose claims were dependent on the same factual determinations, had every incentive to litigate those fact issues. In addition, there are no other defendants in

this case who will be relitigating the issues as a defense to their own liability. Finally, in this case, application of collateral estoppel will promote judicial efficiency, protect Appellees from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues.

### ii. Judicial Estoppel

"Judicial estoppel precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage." *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009) (per curiam) (citing *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008)); *see New Hampshire*, 532 U.S. at 749–51, 121 S.Ct. 1808. To be judicially estopped, the party against whom it is asserted (1) must be taking a clearly inconsistent position in the present action to the position it asserted in the prior action, (2) must have prevailed in the prior action, and (3) would gain an unfair advantage if allowed to assert its present, inconsistent position. *See Ferguson*, 295 S.W.3d at 643. "The doctrine is not intended to punish inadvertent omissions or inconsistencies but rather to prevent parties from playing fast and loose with the judicial system for their own benefit." *Id.* (citing *Pleasant Glade Assembly of God*, 264 S.W.3d at 7.)

Automotive asserts that Appellees argued in the bankruptcy court that Automotive's claims were "unrelated State Court matters," which it maintains is clearly inconsistent with their position in this case that those matters were decided in the prior proceeding. As seen above, Appellees argued that Automotive had no legal grounds to invoke the subject-matter jurisdiction of the bankruptcy court or to force Appellees to defend the unrelated state court claims in that forum. The bankruptcy court dismissed Automotive and its claims on jurisdictional grounds, finding that "there [was] not 'related to' jurisdiction as to this non–Debtor's claims."

Therefore, by arguing that Automotive's claims were unrelated state court matters, Appellees appear to have been arguing in the context of the "related to" jurisdiction of the bankruptcy court. For a bankruptcy court to have jurisdiction to hear an action, the action must at least be related to the bankruptcy. *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999). "For [related to] jurisdiction to attach, the anticipated outcome of the action must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate." *Id.* In this context, arguing the claims are unrelated state court matters is another way of saying that Automotive's claims are not related to BPRE's bankruptcy because the outcome of Automotive's claims would either (1) not alter the rights, obligations, and choices of action of BPRE, or (2) not have an effect on the administration of the bankruptcy estate. Arguing that the bankruptcy court does not have "related to" jurisdiction over Automotive's claims is not inconsistent with asserting that the fact determinations made by the bankruptcy court that were necessary to its judgment against BPRE should not be relitigated in this state court action, even though the result is fatal to at least some of Automotive's state court claims.

Further, Appellees did not gain an unfair advantage in bankruptcy court. First, Automotive has not argued, nor does the record indicate, that it was prevented from pursuing its claims in state court to a final hearing on the merits before the preclusive effects of the federal courts' findings became final. Automotive filed this suit on

January 26, 2010, and the trial court granted Appellees' first motion for summary judgment, which was reversed by the First Court of Appeals, on August 15, 2011. Thus, Automotive had over one and one-half years to prosecute its claims to final judgment. In addition, as Appellees have pointed out, had Automotive been allowed to pursue its claims in the adversary proceeding, any resulting judgment would have been subject to a jurisdictional challenge on appeal, either by a party or by a higher court. *See id.* at 1021.

Therefore, we hold that judicial estoppel does not apply under the facts of this case. In addition, as to its breach of contract, unfair competition by misappropriation, and fraud claims, we overrule Automotive's first point of error.

### 2. Quantum Meruit

 However, the bankruptcy court did not make any fact-findings that would preclude Automotive from litigating its quantum meruit claim. "Quantum meruit is an equitable theory of recovery that is based on an implied agreement to pay for benefits received. *Protocol Techs., Inc. v. J.B. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 613 (Tex. App.–Eastland 2013, no pet.) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). The elements of quantum meruit are "(1) valuable services and/or materials were furnished, (2) to the party sought to be charged, (3) which were accepted by the party sought to be charged, and (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Id.* at 613–14 (citing *Heldenfels Bros., Inc.*, 832 S.W.2d at 41).

Quantum meruit is based on "the principle of unjust enrichment." *Id.* at 614 (quoting *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985)). A plaintiff may recover under unjust enrichment "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Id.* (quoting *Heldenfels Bros., Inc.*, 832 S.W.2d at 41). "It is 'based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Id.* (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)).

In its memorandum opinion regarding BPRE's similar claims, the bankruptcy court found that Appellees paid the utilities and maintained the property in exchange for using a small portion of BPRE's property to repair and store automobiles. BPRE's claims were based on Appellees' use of BPRE's real property and improvements. However, Automotive's claims are based on the alleged use of its telephones, lifts, and service equipment for profit-making activities. The bankruptcy court did not make any findings related to these allegations. Further, it based its denial of BPRE's similar claims on Appellees' payment of utilities and maintenance of BPRE's property, but made no mention of Automotive's property. In their brief, Appellees did not specifically address the quantum meruit claim. At oral argument, the only specific findings that Appellees identified as applying to their collateral estoppel claims were the bankruptcy court's findings that there was no intentional delay by Appellees in closing the APA, that none of Automotive's damages were caused by Appellees,[17] and that Automotive's damages were caused by its clos-

---

17. The district court found that for the majority of BPRE's claims, any damages it suffered were the result of Automotive's and BPRE's financial problems and Old Chrysler's bankruptcy, not the failure of Appellees to fully execute the APA and lease. *BPRE, LP,* 2011 WL 13069405, at *4.

ing of its dealership and its failure to contest the rejection of its franchise by Old Chrysler. While these findings may impact Automotive's breach of contract and fraud claims, they do not relate to its quantum meruit claim, which is factually unrelated to these other claims.

Since the bankruptcy court did not make any finding essential to its judgment that related to Automotive's quantum meruit claim, we find the trial court erred in granting summary judgment on this claim. As to its quantum meruit claim, we sustain Automotive's first point of error.

### 3. Tortious Interference with Prospective Business Relations

To recover for tortious interference with prospective business relations, a plaintiff must show that

(1) there was a reasonable probability that the parties would have entered into a business relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.

*Richardson–Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App.–Houston [1st Dist.] 2006, pet. denied) (citing *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001)). Evidence of a reasonable probability that the parties would have entered into a business relationship requires a showing that "more than mere negotiations occurred." *Id.* at 476.

Automotive's allegations under this count are identical to the allegations made by BPRE in its similar claim in the adversary proceeding. The factual basis for Automotive's claim is not clear from the amended petition since it neither identifies any prospective business relationship nor what actions Appellees took that interfered with the same. However, in its response to the Second and Third MSJ, Automotive attached the affidavit of Pretzer, which stated:

9. Without Defendants subsequent occupation of the property and its false representations that it was going to purchase [Automotive]'s assets, or that the assets had already been sold, [Automotive] would have been able to sell or rent its service equipment to other auto dealerships, auto repair organizations, car rental facilities, boating or other recreational activity dealership. In fact, in April 2010, Stacey Gillman of the Gillman Automotive Group approached me about purchasing the [Automotive] assets but when she attempted to view the assets, she was rebuffed by Defendants who incorrectly told her that the assets had already been sold—to them.

Thus, it appears that Automotive is asserting that Appellees interfered with the sale of its service equipment to Gillman, apart from any claim that BPRE may have had relating to its real property.

Appellees argue that the following findings by the bankruptcy court directly impact Automotive's tortious interference with prospective business relations claim:

- [Automotive] had an agreement to sell its equipment to RML [Dodge].
- Neither party notified the other that the APA had been terminated.
- Any argument that other parties were interested in the real property owned by BP RE "is not supported by the evidence."

- Even if BP RE was able to secure a lease on the real property with another party it would not have any assurance that such a lease to a party other than RML [Dodge] would also provide for a sale of [Automotive's] equipment.
- The July 2009 Lease became effective March 1, 2010.

They argue that these findings conclusively negate the first, second, and fourth elements of Automotive's claim.

Regarding the first element, Appellees argue that findings 3 and 4 above combine to establish that there was no third party that was reasonably likely to purchase Automotive's assets. However, these "findings" are drawn from a section of the memorandum opinion on remand that the bankruptcy court characterized as its comments on BPRE's additional argument made at the hearing on remand and "beyond the scope of the remand." Therefore, these comments by the bankruptcy court were not essential to its judgment and will not support a summary judgment based on collateral estoppel.

Regarding the second element, Appellees argue that since the bankruptcy court found that RML Dodge had an agreement to purchase Automotive's assets, which they claim was in place at the time of its alleged representation to Gillman, it made no misrepresentation to Gillman. They also argue that since the July lease became effective in March 2010, RML Dodge was legally using Automotive's assets under the July lease, which they claim included the use of all assets relevant to running a dealership. However, the "finding" Appellees rely upon also appears in the comment section of the memorandum opinion on remand and was not essential to the bankruptcy court's judgment. In addition, the bankruptcy court did not make a finding that the APA was still in effect in April 2010, when the representation to Gillman was allegedly made. Further, there is no finding by the bankruptcy court that RML Dodge was legally using Automotive's assets in April 2010.

Regarding the fourth element, Appellees argue that the federal district court found that any damages caused to BPRE were the result of BPRE and Automotive's financial problems and the bankruptcy of Old Chrysler, not RML Dodge's failure to fully execute the APA and leases. Therefore, it reasons, Appellees could not be the cause of any damages to Automotive. Although the federal district court made this finding as to "the majority of BPRE's claims," it did not associate the finding with any specific cause of action. Further, this finding by the federal district court does not appear to have any relevance to Automotive's tortious interference claim, which is not based on the failure of RML Dodge to fully execute the APA and leases, but rather on Appellees' representations to Gillman regarding the sale of Automotive's assets.

Since the bankruptcy court did not make any findings essential to its judgment that would preclude Automotive from litigating its tortious interference with prospective business relations claim, granting summary judgment on this claim based on tortious interference would be improper. Therefore, we sustain Automotive's first point of error as to its tortious interference with prospective business relations claim. However, Appellees moved for summary on this claim based both on collateral estoppel (in their Third MSJ) and on other grounds (in their Fourth MSJ). Since the trial court granted both the Third MSJ and the Fourth MSJ without stating its grounds, we must determine whether the trial court's granting of the Fourth MSJ may be upheld.

**B. The Fourth MSJ**

In their Fourth MSJ Appellees asserted their entitlement to summary judgment on the tortious interference with prospective business relations claim since (1) there was no issue of material fact that there was no prospective business relationship between Gillman and Automotive, and (2) there was no issue of material fact that Appellees did not cause any damages to Automotive related to its tortious interference with prospective business relations claim.

 Automotive does not make any substantive challenges to the granting of the Fourth MSJ. Rather, in its third point of error, it asserts the trial court erred in granting the Fourth MSJ because (1) it was filed after the trial court's submission deadline, and (2) the motion was not set for hearing.[18] Automotive argues that since the Fourth MSJ was not set for hearing, it did not have notice of a hearing and was deprived of the opportunity to respond to the Fourth MSJ.[19] Appellees argue that they complied with the requirements of Rule 5 of the Texas Rules of Civil Procedure, and, therefore, their Fourth MSJ was timely filed. *See* TEX. R. CIV. P. 5. They also argue that the trial court's order setting a deadline for the filing of motions for summary judgment and responses provided notice of the submission date of the motions.

Rule 5 provides that if a "document is sent to the proper clerk by first-class United States mail in an envelope ... properly addressed and stamped and is deposited in the mail on or before the last day for filing same" and it is "received by the clerk not more than ten days tardily," it "shall be filed by the clerk and be deemed filed in time." TEX. R. CIV. P. 5. The trial court's order required motions for summary judgment to be filed by August 21, 2015. Attached to Appellees' response to plaintiff's objection to and motion to strike defendant's reply to Third MSJ and Fourth MSJ is the affidavit of Ysenia C. Briones, who avers that she mailed the Fourth MSJ to the Freestone County district clerk, by first-class, United States mail, in a properly addressed and stamped envelope on August 21, 2015. The Briones affidavit shows that Appellees complied with Rule 5, and the file-mark on the Fourth MSJ shows that it was filed on August 25, 2015. Therefore, the Fourth MSJ was timely filed.

 "To be entitled to traditional summary judgment, a movant must comply with the requirements set forth in Rule 166a(c)." *Jones v. Serv. Credit Union*, No. 06-14-00077-CV, 2015 WL 3609166, at *4 (Tex. App.–Texarkana June 10, 2015, no pet.) (mem. op.) (quoting *In re Estate of Valdez*, 406 S.W.3d 228, 232 (Tex. App.–San Antonio 2013, pet. denied)). Rule 166a(c) gives the nonmovant twenty-one days' notice before a summary judgment hearing and provides that the nonmovant may file its response and opposing affidavits not later than seven days before the hearing date. TEX. R. CIV. P. 166a(c). While an oral hearing on the motion is not mandatory, notice of the hearing or submission of the motion is required. *See Martin v.*

---

**18.** Automotive also asserts that the trial court erred in considering Appellees' reply to its Third MSJ and Fourth MSJ because it added new evidence not disclosed in discovery or provided in its motion. However, this argument is without merit since no new evidence was attached to the reply.

**19.** Although Automotive did not file a motion for new trial complaining of its lack of notice, it complained of the lack of notice of a hearing on the Fourth MSJ in its objection to and motion to strike defendants' reply to third and fourth supplemental traditional motion for summary judgment, filed on September 18, 2015, which was impliedly overruled when the trial court granted the Fourth MSJ. Therefore, we find that Automotive has preserved this error. *See* TEX. R. APP. P. 33.1(a).

*Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (per curiam). "Generally, a trial court errs when it fails to give notice of the submission date for a motion for summary judgment." *Jones*, 2015 WL 3609166, at *4 (quoting *Valdez*, 406 S.W.3d at 232 (citing *Martin*, 989 S.W.2d at 359) ). "The rationale for requiring such notice is that without notice of the submission date, 'the nonmovant cannot know when the response is due.'" *Id.* (quoting *Valdez*, 406 S.W.3d at 232 (quoting *Rorie v. Goodwin*, 171 S.W.3d 579, 583 (Tex. App.–Tyler 2005, no pet.); *accord Martin*, 989 S.W.2d at 359. For this reason, notice of a date certain on which the motion will be heard or considered by submission is required in order to comply with Rule 166a(c). *Ready v. Alpha Bldg. Corp.*, 467 S.W.3d 580, 585–86 (Tex. App.–Houston [1st Dist.] 2015, no pet.); *Rorie v. Goodwin*, 171 S.W.3d 579, 583–84 (Tex. App.–Tyler 2005, no pet.). Further, the notice provisions of Rule 166a are strictly construed, and failure to give proper notice violates due process. *Ready*, 467 S.W.3d at 584; *Rorie*, 171 S.W.3d at 583–84.

As previously noted, Appellees sent Automotive notice that their Third MSJ was set for hearing on September 21, 2015. On August 4, 2015, the trial court sent the parties a notice of case setting that required the parties to submit motions for summary judgment and responses thereto by August 21, 2015. The notice also provided:

**NO FORMAL HEARING WILL BE HELD ON THESE MOTIONS. THERE WILL BE NO HEARING ON SEPTEMBER 21, 2015. JUDGE DEBORAH OAKES EVANS WILL RULE ON THESE MATTERS BY SUBMISSION ONLY. PARTIES WILL BE NOTIFIED OF RULING UPON SUCH.**

In their brief, Appellees argue that this notice can only be read to mean that the trial court was cancelling the hearing on motions for summary judgment set for September 21, 2015, and that it would take up the motions by submission on that date.

We agree that the notice cancelled the hearing date on the Third MSJ that had previously been set for September 21. However, the notice of case setting did not apply only to the Third MSJ, but rather to any motions for summary judgment that were filed by August 21. Regarding all motions for summary judgment filed, the trial court notified the parties that there would be no oral hearing and that it would consider the motions by submission.[20] However, nowhere in the notice of case setting does the trial court give notice of a date when the motions would be considered. Further, the record shows that the trial court did not rule on the motions until February 16, 2016, so there is no indication that the trial court considered the motions by submission on September 21, 2015.

Without notice of when the Fourth MSJ would be considered by submission, Automotive was deprived of its right to file a timely response. At oral argument, Appellees argued that Automotive could have filed a motion for leave to file its response. However, this misses the point. In this case, Appellees waited until the last day under the notice of case setting to file their Fourth MSJ. Undoubtedly, Automotive had a right to file a response irrespective of the deadlines set forth in the notice of case setting. But, as the court of appeals in *Ready v. Alpha Building Corp.* explained, the deadline for filing a response is deter-

---

**20.** Automotive filed its response to the Third MSJ and does not complain of a lack of notice of the submission date of that motion.

mined by the submission date, and the nonmovant has the right to utilize all of the time until its response is due to formulate and file its response. *Ready*, 467 S.W.3d at 585. Without knowing the submission date, Automotive could not know when to file either its response or its motion for leave to file its response.

We find that the trial court erred in granting the Fourth MSJ without giving Automotive notice of a specific date when the Fourth MSJ would be considered by submission. We also find that since Automotive was deprived of its right to file a response, it was probably prevented from properly presenting its case on appeal. *See* TEX. R. APP. P. 44.1(a)(2); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 364 (Tex. App.–Dallas 2009, pet. denied). We sustain Automotive's third point of error.[21]

## III. Conclusion

We affirm the trial court's summary judgment as to Automotive's breach of contract, unfair competition by misappropriation, and fraud claims. We reverse the trial court's summary judgment as to Automotive's quantum meruit, unjust enrichment, and tortious interference with prospective business relations claims and remand these claims to the trial court for further proceedings.

---

21. Since we have sustained Automotive's first and third points of error as to its tortious interference with prospective business rela-tions claim, we need not address its second point of error.